**RIO DELTA LAND COMPANY, Appellant,**

v.

**E. W. JOHNSON et al., Appellees.**

**No. 1263.**

Court of Civil Appeals of Texas, Corpus Christi.

May 18, 1978.

Rehearing Denied June 8, 1978.

Ronald G. Byrnes, Byrnes, Myers, Adair, Campbell & Sinex, Houston, for appellant.

Lee Arnett, Brownsville, Jerry L. Hughes, Bliss & Hughes, Dallas, for appellees.

## OPINION

BISSETT, Justice.

This is a suit to set aside a sheriff's deed to a tract of land in Cameron County, Texas, hereinafter referred to as the "1,000 acres". Trial was to the court, a jury having been waived by all parties. Judgment was rendered on May 23, 1977, that Rio Delta Land Company, the plaintiff, take nothing by its suit against E. W. Johnson and the other defendants. Rio Delta has appealed.

The defendant John S. Caputa has filed a brief in this Court; the defendants E. W. Johnson and wife, Irene Johnson have not filed such a brief; the remaining defendants have given a "conditional notice of appeal", and have filed a brief wherein they contend that they are entitled to judgment against the defendant Caputa for breach of warranty only in the event that this Court reverses the judgment of the trial court. We affirm the judgment of the trial court.

On June 14, 1968, the District Court of Cameron County, Texas, in Cause No. 47,-765–A, rendered judgment in favor of E. W. Johnson and Irene Johnson against Rio Delta for $15,200.00, plus interest and costs. Rio Delta appealed that judgment but did not post a supersedeas bond. The appeal was dismissed by this Court on December 31, 1968.

Pursuant to a writ of execution which was issued on July 26, 1968, the Sheriff of Cameron County levied upon Rio Delta's interest in the 1,000 acres on August 15, 1968. Notice of the pending sheriff's sale was published in a newspaper in Cameron County on August 15, 22, and 29, 1968. The

Sheriff sold the land in question to the Johnsons on September 3, 1968; the land was sold for $15,900.00, of which $544.56 was paid in cash, and the balance was credited by the Johnsons on the judgment.

Rio Delta filed suit in the District Court of Cameron County on September 11, 1968 against Boynton Fleming, the Sheriff of Cameron County, E. W. Johnson and Irene Johnson. The suit was docketed as No. 49,051–B. Rio Delta alleged that it had "suffered damages in the sum of $2,500.00" as a result of the sheriff's sale to the Johnsons. Citations were never served on any of the defendants and none of them made an appearance. The suit was dismissed for want of prosecution on March 3, 1969.

The land was sold by the Johnsons to Caputa on September 13, 1968 for $18,-200.00. Caputa created a subdivision out of the land in question, South Shores Subdivision, Unit # 1, on August 20, 1969. Caputa then sold lots in the subdivision to third parties.

On July 15, 1970, Rio Delta filed the suit against Caputa, et al, to set aside the sheriff's deed on the grounds: 1) the sheriff's sale was irregular because of lack of proper notice; 2) the land was sold at a grossly inadequate price; and 3) the sale was voidable because Caputa was charged with knowledge of the irregularities concerning the notice. Summary judgment in favor of the defendants was reversed by this Court on December 30, 1971, and the cause was remanded to the trial court for a trial on the merits. See *Rio Delta Land Company v. Johnson*, 475 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.). The instant appeal is from the judgment which was rendered after such a trial.

It is conclusively established by the record that proper notice of the sheriff's sale as required by Rule 647, T.R.C.P., was not given by the sheriff. The sale, which was held on September 3, 1968, was held on a day which was less than twenty days from the date of the publication of the first notice of sale on August 15, 1968.

As a general rule, an irregularity in a sheriff's sale, standing alone, will not authorize the setting aside of an execution sale; however, when such irregularity is accompanied by a grossly inadequate purchase price, the additional circumstance will give rise to an action to invalidate the sale. *Allen v. Stephanes*, 18 Tex. 658 (1857); *Rio Delta Land Company v. Johnson*, supra, at page 348. The particular facts of each case will determine whether or not the price for which the property was sold was so grossly inadequate as to warrant the setting aside of the execution sale. *House v. Robertson*, 89 Tex. 681, 36 S.W. 251 (1896).

A concise statement of the general rule which controls this appeal appears in *McKennon v. McGown*, 11 S.W. 532, 533 (Tex.Sup.1889), as follows:

". . . The rule in this state upon the question of inadequacy of price is that mere inadequacy of consideration will not, of itself, warrant the setting aside of the sale; yet if, in addition thereto, there be the appearance of unfairness, or any circumstance, accident, or occurrence in relation to the sale of a character tending to cause such inadequate price, the sale will be set aside; and if the disproportion between the price paid and the real value at the time of the property is enormous, but slight circumstances will justify vacating the sale, and the greater such inadequacy of price the slighter need be the circumstances of fraud, accident, or mistake. . . ."

For an extensive collection of cases on the subject, see *Prudential Corporation v. Bazaman*, 512 S.W.2d 85, 89–91 (Tex.Civ. App.—Corpus Christi 1974, no writ).

The trial court filed 94 findings of fact and 9 conclusions of law. Most of the findings and conclusions are challenged by Rio Delta. We discuss only those which control the disposition of this appeal.

### Findings of Fact

The trial court, among other findings, found: the land in question was undeveloped and had no significant market value at the time of the sheriff's sale; the irregular-

ities in the notice of sale did not affect the amount bid at the sheriff's sale; the price paid for the land at the sheriff's sale was not grossly inadequate; on or about September 6, 1968, the attorney who represented the Johnsons in their suit against Rio Delta advised the latter's attorney that the Johnsons were willing to convey the 1,000 acres to Rio Delta for the amount they paid pursuant to the sheriff's sale, plus expenses, but that such offer was rejected by Rio Delta's attorney; Rio Delta did not make actual tender of the sum of $544.46 until on or about November 5, 1976, a few days prior to the commencement of trial in this cause; the said tender was not timely; the tender of $544.56 was made only to the Johnsons and not to Caputa; Rio Delta has never tendered or offered to tender any sum of money to Caputa.

### Conclusions of Law

In summary, the trial court concluded that Rio Delta should "take nothing in this suit" because it failed to prove that the land in question was sold at a grossly inadequate price, or that the irregularities as to notice of sale were calculated to or did affect the sale or the amount bid at the sale.

Rio Delta's points 1, 2, 3, 4, 6, 8, 11, 12, 14, 15 and 17 attack the findings and conclusions of law made and filed by the trial court. The aforesaid eleven points challenge fifty-eight separate findings of fact and nine separate conclusions of law. Specifically, point 1 complains of 6 findings and 1 conclusion; point 14 complains of 4 findings and 3 conclusions; point 15 complains of 3 findings and 3 conclusions; point 17 complains of 7 findings and 2 conclusions; and the remaining points complain, in varying numbers, of from 4 to 9 findings. None of the points contain separate subdivisions for each challenged finding, and the challenges are set apart by use of a semicolon only. All of the points go directly from a restatement of the point to the argument and authorities without a separate statement of the facts for each point. Quotations from the Statement of Facts are in-

terwoven, argumentatively, in the argument and authorities. The same is true with respect to references to exhibits.

This Court, in *Leal v. Aluminum Company of America*, 443 S.W.2d 942, 945–946 (Tex.Civ.App.—Corpus Christi 1969, no writ, speaking through Justice Nye, now Chief Justice, said:

"There must be a substantial compliance with the provisions of the briefing rules in order for a litigant to have his points of error considered by the appellate court. Although the rules are to be given a liberal construction to the end that a just, fair, equitable and impartial adjudication of the rights of the parties may be obtained, a sufficient compliance with the rules is necessary to justify consideration of the point of error. This has been made mandatory by our Supreme Court. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960). . . ."

■ A point of error is multifarious if it embraces more than one specific ground of error, or if it attacks several distinct and separate rulings of the trial court. *T. J. Service Co. v. United States Fidelity & Guaranty Co.*, 472 S.W.2d 168 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd, n. r. e.); *Ives v. Watson*, 521 S.W.2d 930 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *City of Shamrock v. Hrnciar*, 453 S.W.2d 898 (Tex.Civ.App.—Eastland 1970, writ ref'd n. r. e.); *Johnson-Sampson Construction Co. v. W & W Waterproofing Co.*, 274 S.W.2d 926 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.).

■ It has long been the policy of this Court to indulge a liberal construction of the briefing rules in favor of the sufficiency of the brief, and to give effect thereto if we, from an examination of the statement under each point (or grouped points), can determine with some degree of certainty the nature of the complaint raised by the point. Here, there is no such statement. In order to properly dispose of the points as here presented, we would have to brief each of the challenged findings, many of which are completely independent of other findings which are complained of in the appeal.

Without the benefit of a statement to assist us, the task would be enormous. No such liberality of construction is contemplated by the briefing rules.

■ In the instant case, the points are multifarious and will not be considered since each point attacks several separate and distinct findings of fact, and in some instances, separate and distinct conclusions of law. As already stated, there is no "statement of the facts" pertinent to each point (there being no grouped points) to assist us in examining the 1290 pages of testimony and the several hundred pages of exhibits. Rio Delta's brief does not meet the requirements of Rule 418(e), T.R.C.P.

However, if the points were to be considered, a careful examination of the record fails to reveal any reversible error in the case. Rio Delta attacks the foregoing findings and conclusions as being either against the great weight and preponderance of the evidence, or as being "without any substantial support in the evidence".

Both Rio Delta and Caputa presented evidence of probative value with respect to the market value of the land that was sold at sheriff's sale. There is a conflict in the evidence adduced by each.

Mr. P. L. Hermosa, a real estate broker and appraiser, who had lived in Brownsville, Texas, for all of his 68 years, and who had had 26 years experience in the real estate business in that area, testified for Caputa. He stated that he inspected the 1,000 acres, and made an appraisal thereof "as of 1968". At that time, according to his testimony: the property was vacant; its elevation was three to seven feet above water; there was "no demand for real estate". In his opinion, the land had "a potential value for resort purposes"; and that on September 3, 1968 (the date of the execution sale), the fair market value of the subject land on a per acre basis would have been $50.00 per acre if it had been exposed to the market "for a year and a half or two years" prior thereto, but would have a fair market value of only $18.00–$20.00 per acre if it had been exposed to the market for only twenty-one days.

Rio Delta's expert witnesses testified that as of September 3, 1968, the fair market value of the land was from $127,000.00 to $140,000.00. Those witnesses testified that in order to arrive at a "fair market value", the subject property had to be "exposed to the market for a reasonable length of time", and that as to the 1,000 acres, a reasonable time was "from six months to a year". There was further testimony from Rio Delta's witnesses that the fair market value would be reduced "if you were going to get the property sold in 21 days", and that a sale within 18 days instead of 21 days would not affect the sales price.

■ The trial judge resolved the conflict in the evidence concerning fair market value in favor of Caputa and against Rio Delta. The land sold for about $15.00 per acre at the execution sale. The testimony of Hermosa, an expert witness, standing alone, is sufficient to uphold the finding that the sales price was not grossly inadequate. We cannot disturb those findings since they are supported by evidence of probative value and are not against the great weight and preponderance of the evidence as to be clearly wrong. See *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd); *Hosack v. Cassidy*, 543 S.W.2d 202 (Tex.Civ.App.—Corpus Christi 1976, no writ).

Honorable Joel Ellis, the attorney who represented the Johnsons in their suit against Rio Delta, testified that within a day or so after the execution sale, the Honorable Polk Hornaday, who was the attorney for Rio Delta at that time, called him and asked him if Rio Delta could "re-purchase the land". Ellis, on behalf of the Johnsons, offered to sell the land to Rio Delta for $15,900.00 (the amount of Johnson's bid), plus the "attendant advertising costs and sheriff's fees". He also advised Hornaday that Caputa was "dickering to buy the property", and that the Johnsons "intended to sell the property and would sell it to whichever of those people or someone else who made the first commitment to

buy". Ellis stated that Hornaday, in a later conversation, "advised me his folks either were not going to or did not wish to buy the property, and that they were going to appeal the case, file a suit". Hornaday did not recall having any such conversations with Ellis, and testified:

"I don't recall that conversation. Now, that could have been. I don't say it didn't take place but I just don't recall it."

At the time of trial, (November, 1976), Caputa, in the development of South Shores Subdivision, Unit # 1, had expended large sums of money subsequent to August 20, 1969, when the map of the subdivision was filed for record. The subdivision contained 391 lots, and as of that date approximately 257 lots had been sold to 150 people. Rio Delta, in its fourth amended original petition, its trial pleading, which was filed on August 11, 1976, tendered $544.56 to "E. W. Johnson and wife, Irene Johnson", and alleged that it "further agrees to do equity herein as the Court may deem just and proper". There is no evidence that Rio Delta had any funds with which to reimburse Caputa for any money expended by him in purchasing the land or in making certain improvements thereon in connection with the creation of the said subdivision and the selling of lots therein. There is no evidence of any actual tender of money by Rio Delta to Caputa.

There is no evidence that the state irregularities in the execution sale were calculated to bring about an execution sale of the land for an inadequate price. The irregularities complained of did not cause the subject land to be sold at an execution sale for a grossly inadequate price. Despite the multifariousness of the points and the failure to follow the briefing rules, we have reviewed the record in its entirety and, after carefully considering all of the challenged findings and conclusions set out in the points, we hold that the findings and conclusions are fully supported by evidence. They are not against the great wei.;ht and preponderance of the evidence. For the several reasons stated, points 1, 2, 3, 4, 6, 8, 11, 12, 14, 15 and 17 are overruled.

We have carefully considered all of Rio Delta's remaining points. They are overruled.

In *Rio Delta Land Company v. Johnson*, supra, at page 350, this Court said:

"It has been brought to the attention of this Court that many subsequent purchasers of lots out of the land in question may be innocent purchasers for value. Their rights will have to be protected . ."

Apparently, all rights of such purchasers have been protected. By a special warranty deed dated November 8, 1976, Rio Delta conveyed to "each and every lot owner of record, except John S. Caputa, in South Shores Subdivision, Unit # 1 . . . the lot or lots that stand in their respective names as of this date . . ."

The judgment of the trial court is AFFIRMED.