aberdeen 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-329-CV





TEXAS WORKERS' COMPENSATION INSURANCE FACILITY,



 APPELLANT


vs.





THE ABERDEEN GROUP, INC.; WALLACE BRUMLEY; AND DOUGLAS A. BRICE,



 APPELLEES



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT



NO. 93-016-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING



 





 Texas Workers' Compensation Insurance Facility (the "Facility"), appellant,
obtained an ex parte receivership over The Aberdeen Group, Inc. ("Aberdeen"), appellee. The
Facility appeals from the trial court's order terminating that receivership. Other appellees are
Wallace Brumley, the president of Aberdeen, and Douglas A. Brice, Aberdeen's majority
shareholder. The Facility brings ten points of error. We will affirm the trial court's order.



FACTUAL AND PROCEDURAL BACKGROUND


 On January 19, 1993, the Facility filed suit and requested an ex parte receivership
over Aberdeen, citing as grounds that Aberdeen was insolvent or in danger of insolvency, that
Aberdeen was engaged in a course of conduct justifying a receivership under equitable principles,
that other remedies were inadequate, and that a compelling emergency existed to justify the
receivership ex parte. The Facility alleged that Aberdeen had ceased all operations, that Brumley
had induced at least one Aberdeen client to cancel its account and move to another firm, and that
Brumley was operating another company that was taking over Aberdeen's client accounts. The
Facility further alleged that Aberdeen would probably owe a worker's compensation insurance
premium to the Facility and that Aberdeen's corporate records were in danger of being destroyed
or removed from the court's jurisdiction.

 The trial court granted the Facility's application ex parte and appointed a receiver
for Aberdeen. On January 27, the court, on the Facility's motion, appointed a substitute receiver. 
The Facility filed notices of its intention to depose Aberdeen and Brumley, among others. 
Brumley moved for a protective order. Aberdeen and Brumley also filed various motions
objecting to the ex parte receivership and moved to vacate the receivership.

 A hearing on the motions began on January 22 and resumed on February 5,
February 16, February 18, and March 3. On March 4, the trial court signed an order terminating
the receivership. The trial court filed findings of fact and conclusions of law on June 21, 1993.

 The Facility brings ten points of error, complaining that the trial court erred by:
(1) denying the Facility the opportunity to cross-examine the receiver; (2) denying the Facility the
opportunity to present its case-in-chief and to call and examine witnesses either in support of its
pleadings or in opposition to the motions to vacate; (3) adopting an improper judicial decision-making process; (4) denying the Facility's "Objection to Entry of Final Order and Motion to
Resume Proper Procedure"; (5) rendering judgment before the Facility had closed its case; (6)
rendering judgment on the merits before trial; (7) rendering judgment and filing findings of fact
and conclusions of law in a proceeding in which it lacked subject-matter jurisdiction; (8) rendering
judgment and filing findings of fact and conclusions of law in a proceeding it found to be moot;
(9) granting the motions to vacate, because the evidence is legally and factually insufficient to
support findings of fact one through fifty; and (10) granting the motions to vacate, because
conclusions of law one through twenty-eight are not supported by sufficient findings of fact.



DISCUSSION



1.  Standing

 In point of error seven, the Facility complains that the trial court erred by
proceeding to judgment, instead of dismissing the case, when it concluded that the Facility lacked
standing to bring the receivership action. The Facility asserts that the trial court concluded that
the Facility lacked standing to bring suit, and thus the trial court lacked subject-matter jurisdiction
and had no power to do anything except dismiss the case immediately. (1)

 The trial court did not file a finding of fact or conclusion of law that explicitly
stated that the Facility lacked standing to bring the receivership action. Instead, the Facility's
argument rests on its assertion that, reading the findings and conclusions together, the trial court
impliedly decided the Facility lacked standing.

 Where findings of fact are subject to more than one reasonable construction, they
should be given that meaning which will support the court's action as expressed in its judgment. 
DeLlano v. Moran, 333 S.W.2d 359, 360 (Tex. 1960); Elder, Dempster & Co. v. Weld-Neville
Cotton Co., 231 S.W. 102, 104 (Tex. 1921). Furthermore, we must reconcile any apparent
conflicts in findings of fact where we reasonably may do so. Elder, Dempster & Co., 231 S.W.
at 104. We are not bound by a trial court's conclusions of law, but must affirm the judgment if
there is any theory on which that may be done. LaChance v. Hollenbeck, 695 S.W.2d 618, 622
(Tex. App.Austin 1985, writ ref'd n.r.e.).

 The trial court's judgment terminated the receivership, granted injunctive relief,
and provided for the payment of fees to the receivers, thus implying that the trial court concluded
it had jurisdiction over the cause. Furthermore, the findings and conclusions do not address every
basis for a receivership asserted by the Facility. Thus, we believe the findings and conclusions
may reasonably be construed to support the trial court's assumption of jurisdiction over the action. 
Much of the Facility's argument focuses on conclusion of law number thirteen, which states,
"Under Tex. Civ. Prac. & Rem. Code § 64.001, a general creditor does not have standing to seek
a general receivership over all of the debtor's assets to satisfy its debt." We are not bound by this
conclusion, and we note that in some circumstances a general creditor may bring a receivership
action. See Texas Consol. Oils v. Hartwell, 240 S.W.2d 324, 327-28 (Tex. Civ. App.Dallas
1951, mand. overr.); Supervend Corp. v. Jones, 235 S.W.2d 707, 709 (Tex. Civ. App.Dallas
1950, no writ); Brenton & McKay v. Peck, 87 S.W. 898, 902 (Tex. Civ. App.--Galveston 1905,
no writ).

 In any event, we believe the Facility did have standing to bring this action. "The
general test for standing in Texas requires that there `(a) shall be a real controversy between the
parties, which (b) will be actually determined by the judicial declaration sought.'" Texas Ass'n
of Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). The Facility met both
prongs of this test. We overrule point of error seven.



2.  Mootness

 In its eighth point of error, the Facility complains that the trial court erred by
proceeding to judgment, instead of dismissing the case, when it concluded that the receivership
was moot. This point of error also depends on a determination that, after reading the findings and
conclusions together, the trial court impliedly decided the action was moot. Again, we disagree
with this initial assertion. See DeLlano, 333 S.W.2d at 360; Elder, Dempster & Co., 231 S.W.
at 104. Under this point of error, the Facility focuses on findings of fact thirty-eight and thirty-nine, which state:



38. If, as the Facility alleges, the Client Contracts have been transferred as
alleged by the Facility (Aberdeen alleges they were terminated by the Client
Companies under their own terms) to Advantage, the basis for a receiver
over Aberdeen has disappeared because Aberdeen is alleged by the Facility
to no longer have Client Contracts, and in fact, on the date of the
appointment of a receiver, no longer had rights in the terminated Client
Contracts.


39. A receivership could not accomplish the authorized common law purpose of
maintaining the status quo once the res (the Client Contracts) no longer
existed in the custody and control of the alleged debtor Aberdeen.



We do not read finding of fact thirty-eight to establish that the contracts had been transferred. 
However, even if we did so construe the finding, we do not believe the trial court necessarily
found the proceeding moot. The contracts were not Aberdeen's only assets. Other findings refer
to additional assets, including bank accounts and corporate records. We overrule the Facility's
eighth point of error.



3.  Legal and Factual Sufficiency of the Evidence

 In its ninth point of error, the Facility complains that none of the trial court's fifty
findings of fact are supported by legally and factually sufficient evidence. In its tenth point of
error, the Facility complains that the trial court's twenty-eight conclusions of law are not
supported by sufficient findings of fact.

 "A point of error is multifarious if it embraces more than one specific ground of
error, or if it attacks several distinct and separate rulings of the trial court." Rio Delta Land Co.
v. Johnson, 566 S.W.2d 710, 713-14 (Tex. Civ. App.Corpus Christi 1978, writ ref'd n.r.e.). 
Although we liberally construe briefing rules in favor of a brief's sufficiency, we must be able to
determine the nature of the complaints raised. Tex. R. App. P. 74(p); Rio Delta Land Co., 566
S.W.2d at 713-14.

 We are unable to determine the complaints raised under points of error nine and
ten of the Facility's brief. The Facility merely argues in a general fashion that none of the
findings or conclusions are supported by evidence, without identifying or discussing any particular
finding or conclusion. (2)
 We will not search through the record to find those portions that
correspond to the many findings and conclusions issued by the trial court. The Facility's ninth
and tenth points of error are multifarious and do not comply with the briefing requirements. See
Tex. R. App. P. 74(d). Accordingly, we overrule points of error nine and ten.



4.  Due Process

 In points of error one through six, the Facility complains that the procedure
employed by the trial court in disposing of this cause of action on the merits deprived the Facility
of due process of law.

 The right to be heard is fundamental to the concept of due process. Fuentes v.
Shevin, 407 U.S. 67, 80 (1972); Jordan v. Jordan, 653 S.W.2d 356, 358 (Tex. App.San
Antonio 1983, no writ). This right assures a full hearing before a court having jurisdiction of the
matter, the opportunity to introduce evidence at a meaningful time and in a meaningful manner,
and the right to have judicial findings based on that evidence. Jordan, 653 S.W.2d at 358;
Turcotte v. Trevino, 499 S.W.2d 705, 723 (Tex. Civ. App.Corpus Christi 1973, writ ref'd
n.r.e.). It also includes the opportunity to cross-examine witnesses, to produce witnesses, and to
be heard on questions of law. Jordan, 653 S.W.2d at 358; In re B.M.N., 570 S.W.2d 493, 502
(Tex. Civ. App.Texarkana 1978, no writ). Consequently, rendering judgment without affording
a party these rights may violate due-process guarantees. Speed v. Guidry, 668 S.W.2d 807, 810
(Tex. App.San Antonio 1984, no writ); Jordan, 653 S.W.2d at 358.

 In the present case, the record reflects that at the first hearing, the Facility's
attorney cross-examined the original receiver and later stated that she did not have any witnesses
to call. At the second hearing, after the substitute receiver testified, the Facility's attorney began
cross-examining the receiver by requesting some documents in the receiver's possession. Shortly
into the cross-examination, Aberdeen's attorney objected. The rest of the hearing was composed
of argument over the objection and over the receivership. The record does not show that the
Facility attempted in any way to continue its cross-examination of the substitute receiver.

 At the third hearing, the substitute receiver testified again. The Facility's attorney
requested that the trial judge question the receiver about several matters. Once these questions
were asked, and without excusing the witness, the trial court asked the Facility to proceed. The
Facility's attorney began making legal arguments to the court. The record does not indicate that
the Facility attempted any further cross-examination of the receiver. At the end of the hearing,
the following dialogue occurred:



 [FACILITY]:  Just for the record Judge, we believe that we're entitled to
take discovery under their Motion to Vacate. We haven't had a chance even to
cross examine the Receiver in our last hearing, and we haven't had a chance to put
on evidence, so we feel like we're entitled to those things and we would ask the
Court to allow us to do that. There may be no necessity, depending on the Court's
decision. If that's so, that's so.


 . . . .


 [COURT]:  Let me make sure I understand what you're saying. You're
saying that the Court is not in a position to rule on the motion by Aberdeen, et al,
to vacate Receivership?


 [FACILITY]: Judge, I think you've got plenty of evidence to hold as a
matter of law that this Receivership was justified and should continue.


 [COURT]:  And if I find that I do not, then you're saying you need another
hearing?


 [FACILITY]:  I need some time to do discovery and get more evidence.



As this excerpt illustrates, the Facility did not attempt at the hearing to call other witnesses or
further cross-examine the receiver. At most, the Facility alerted the trial court that it needed more
time to conduct discovery and prepare its case; however, the Facility does not bring a point of
error complaining that it was denied discovery or time to prepare its case.

 The fourth hearing was held by telephone conference call. At that hearing, the trial
court announced that it had read the parties' briefs and then asked, "[B]efore we go forward, if
any of the Counsel have any further arguments or have anything to say before I rule." Counsel
for Aberdeen announced that he had "pretty well exhausted our arguments and re-arguments, so
we're prepared for you to rule." Counsel for the Facility responded, "I stand with that." During
this conference, the court called on Brumley to testify. The Facility lodged the following
objection: 


 [FACILITY]:  . . . I haven't had a chance to finish my deposition of the
man, Judge, and I think I'm more inclined to want to rely on what the Receiver
says than Mr. Brumley says, and I can't get prepared to cross examine him today. 
I thought we were going to hear the Court's decision.


 . . . .


 [COURT]:  The response that Mr. Brumley's giving is in response to the
inquiry by the Court if he would be willing to assure the Court that all outstanding
liabilities of Aberdeen will be paid if I were to dissolve the Receivership; and
whatever testimony he has, I want it to go to that inquiry by the Court.


 . . . .


 [FACILITY]:  Judge, I think that at this stage of the game it's irrelevant to
call upon Mr. Brumley for that sort of a response because the issues before the
Court are whether or not, under equity and under the statutes, given what you
know about the facts of the case was the Receivership appropriate.



At the end of the hearing, the trial court announced it would dissolve the receivership.

 At the fifth and final hearing, also held by conference call, the trial court heard
argument on and denied the Facility's "motion to resume proper procedure" and heard objections
on the final form of the order. The order dissolving the receivership was signed the following
day.

 The record does not support the Facility's claim that it was denied due process. 
Five hearings were held on the various motions filed by the parties, during which the Facility was
afforded several opportunities to cross-examine the receiver, to present its case-in-chief, and to
call and examine witnesses. The trial court did not render judgment before the Facility had closed
its case, nor did it render judgment on the merits before trial. The trial court's procedure did not
violate the Facility's rights to due process.

 Furthermore, the facts of this case are distinguishable from other cases in which
a party has been denied due process because of a trial court's improper procedure. For example,
in Kramer Trading Corp. v. Lyons, 740 S.W.2d 522 (Tex. App.Houston [1st Dist.] 1987, no
writ), after interrupting the direct examination and questioning the first witness, the trial court
announced the hearing was over, granted a temporary injunction, and refused to hear further
evidence or argument. Similarly, in Jordan, the trial court interrupted the cross-examination of
the first witness with a proposed judgment and did not allow the parties any further opportunity
to present evidence. 653 S.W.2d at 357. In Speed, the court expressly refused to hear evidence
on a party's claims. 668 S.W.2d at 809-10. Finally, in Young v. Martinez, 685 S.W.2d 361
(Tex. App.San Antonio 1984, no writ), the trial court expressly refused to hold a hearing and
denied relief to the requesting party. Unlike the foregoing cases, the record in this case does not
show any affirmative action of the trial court that deprived the Facility of due process. The record
does not reflect that the Facility attempted to cross-examine the receiver or call other witnesses,
but was denied the opportunity to do so. We overrule the Facility's points of error one through
six.



CONCLUSION


 We affirm the trial court's order.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: June 15, 1994

Do Not Publish

1.   We understand the Facility's complaint to center around its belief that the trial court
concluded the Facility lacked standing and yet rendered a judgment on the merits of the case. 
We do not understand the Facility to be arguing that in fact it lacked standing; indeed, the
Facility affirmatively states in its brief to this Court that it did have standing to seek a
receivership over Aberdeen's assets.
2.   We note that some of the findings and conclusions refer to facts that were pleaded
by the Facility itself and which appear to have been undisputed. For example, the trial
court made the following findings of fact:


 1. Aberdeen is in the employee "leasing" business, by which it enters into
employee lease contracts with client companies . . . to furnish, by
written lease . . ., employees to the Clients along with providing
employee related benefit packages, including workers' compensation
insurance, 401K Plan, Health and Life Insurance, etc.


 . . . .


17. An ex parte Order Appointing Receiver was entered by the Williamson
County District Court on (Judge Carter) [sic] January 19, 1993, upon the
sworn Application of the Facility.


(Citation omitted). The trial court also made the following conclusions of law:


 6. The appointment of a receiver is one of the "harshest" remedies known to
the law, since an owner invariably sustains an injury when deprived of the
use of the property under receivership.


 . . . .


19. Under appropriate circumstances, a court may appoint a receiver for
"specific corporate assets" that are located in Texas and are involved in
litigation.


(Citations omitted).