Diamond J. PANTAZE, Appellant,

v.

Robert E. SLOCUM et al., Appellees.

No. 17566.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 31, 1974.

Rehearing Denied Feb. 7, 1975.

Matthews, Matthews, and Paul W. Wisdom, Jr., and Larry Z. Sechrist, Dallas, for appellant.

Law, Snakard, Brown & Gambill, and Dennis Swift and Walter S. Fortney, Fort Worth, for appellees, Robert E. Slocum and wife, Patsy Slocum.

Martin, Harrison & Withers, Dallas, for third party defendants, Francis Shushok and wife, Suzette Shushok.

## OPINION

BREWSTER, Justice.

This was a trespass to try title suit that was tried to a jury. Also tried was defendants' counter claim seeking to set aside the sheriff's sale and deed under which the plaintiff claimed title. At the close of the evidence the court granted defendants' motion for a directed verdict, denied the one made by the plaintiff, Diamond J. Pantaze, and rendered judgment for the defendants. The judgment set aside the sheriff's sale

and deed under which Pantaze claimed and awarded title to the house and lot in question to the defendants, Robert E. Slocum and wife, Patsy Slocum. Pantaze, who is an attorney, is appealing from that decree.

Francis Shushok and wife, Suzette Shushok, were claimed to be the common source of title. Pantaze obtained a judgment against the Shushoks on May 8, 1970, in the County Court of Dallas County. He procured an abstract of the judgment and filed it in the judgment lien records of Tarrant County on May 13, 1970. A writ of execution was issued and on September 30, 1971 the sheriff levied the execution on the property involved to collect the judgment. Pantaze claimed title to the lot by reason of being the purchaser at the execution sale. Following this sale held on November 2, 1971, the sheriff deeded to Pantaze the interest that the Shushoks owned in the property on date of the levy of the execution, which date was September 30, 1971.

The Slocums claimed title to the property by reason of having purchased it from the Shushoks for $22,000.00 on July 6, 1970, on which date the Shushoks deeded the land to them.

By means of the counter claim that the Slocums had filed herein against Pantaze, they sought to set aside the sheriff's sale and deed on the grounds that the purchase price paid by Pantaze was grossly inadequate and because there were irregularities in the sale.

We will discuss Pantaze's points of error Nos. 1, 3, 4, 5, 6, 8 and 10 together because in each it is contended that the trial court erred in setting aside the sheriff's sale and deed on the ground that the purchase price was grossly inadequate and there were irregularities in the sale. In each point a different reason is advanced as to why that ruling was erroneous. We overrule all of those points of error.

The law is settled that where the price paid for the property at a sheriff's sale is grossly inadequate and where this is accompanied by irregularities in the sale, even though they are slight, a court of equity will set such sale aside. This is especially true where the debtor makes a prompt offer to pay off the indebtedness involved together with the costs incurred. Moore v. Miller, 155 S.W. 573 (San Antonio Civ.App., 1913, writ ref.); Nance v. Currey, 257 S.W.2d 847 (Dallas Civ.App. 1953, no writ hist.); Cox v. Wheeler, 150 S.W.2d 159 (Texarkana Civ.App., 1941, no writ hist.); Steffens v. Jackson, 16 Tex. Civ.App. 28, 41 S.W. 520 (1897, writ ref.), and Graham v. Cansler, 191 S.W. 856 (Beaumont Civ.App., 1916, no writ hist.).

Pantaze contends that the evidence here did not show as a matter of law that the value of the house and lot at the time of the sheriff's sale was such that the price paid for it at the sheriff's sale by Pantaze ($225.00) was grossly inadequate.

He takes the position that the only evidence before the trial court as to the value of the house and lot was the opinion testimony of the Slocums where they estimated the market value of the house and lot to be $30,000.00.

We disagree. There was other evidence on value. It showed that on July 6, 1970, the Slocums, in a bona fide purchase, bought the house from the Shushoks for a price of $22,000.00; at that time the house was in need of repairs and the Slocums thereafter and before the sheriff's sale on November 2, 1971, spent over $2,000.00 in repairing it and in improving it; the house was located in the Ridglea Hills Addition to the City of Forth Worth; it had over 2,000 square feet of floor space in it; it is ranch style and is partly brick veneered and partly cedar shingled on the sides; it has two bedrooms and a study that has been converted into a bedroom; it has two baths and a dual air conditioning system with two units; it has a dining room area off the living room; it has a large patio in the back yard, a garage, and a work shop at the back of the garage; and the lot on

which the house is located consists of ⅔ of an acre of land.

Seven photographs of the house were introduced into evidence and they showed the house and lot to be an attractive property.

The parties stipulated that the rental value of this property on the date of the sheriff's sale was $200.00 a month and that its rental value at trial time (December 10, 1973) was $225.00 a month.

We hold that these stipulations, together with the undisputed evidence, establish as a matter of law that the value of the house and lot at time of the sheriff's sale was in excess of $22,000.00.

There was $10,926.64 due on the first lien against the house at time of the sheriff's sale. This would mean that Pantaze would be acquiring property having a value of over $11,000.00 through the sheriff's sale.

Pantaze at the sheriff's sale paid $225.00 for the house and lot, $83.00 of that amount being paid to the sheriff for his fees, and the remaining $142.00 was credited on Pantaze's judgment which totaled $759.65.

The amount of Pantaze's bid at the sheriff's sale was thus less than two per cent of the value of the property.

We hold that the trial court did not err in holding as a matter of law that the price Pantaze bid for the property at the sheriff's sale ($225.00) was shockingly disproportionate to the value of the house and lot involved and that such price was grossly inadequate.

Of such a purchase the court in Moore v. Miller, supra, said: " ' . . . the mere fact of attempting to hold property so purchased will be held conclusive evidence of fraud. Certainly, where there is an enormous inadequacy of price at a sheriff's sale, if there are but slight irregularities or other circumstances attending calcu-

lated to prevent the property from bringing something like its reasonable value, it is regarded as unconscientious in the purchaser to hold the property so purchased, and his deed will be canceled.' "

In his 8th point of error Pantaze contends that the Slocums did not make a prompt tender of the balance due on the judgment. His 9th point of error was that the court erred in holding as a matter of law that the Slocums were not guilty of laches in trying to pay Pantaze's judgment lien more than 20 months after they had actual knowledge of the judgment lien. We overrule both points.

The undisputed evidence showed that the Slocums were not aware of this judgment until the time of the closing of their purchase of the house and lot from the Shushoks. They were then told by the title company lawyer that the judgment was on appeal by the Shushoks and that the title company was holding in escrow enough of Shushok's money to pay the judgment if and when it became final. The title company did take into escrow at the closing $815.00 of the Shushok's money for the purpose of paying the judgment with it. The Slocums had nothing to do with the escrow funds and the first time they ever heard of Pantaze and learned that the funds had not been used to pay the judgment was when Pantaze sued them and had them served with citation in this case on March 2, 1972. The Slocums at once, through their attorney, offered to pay Pantaze the principal, interest and attorney's fees that were due on the judgment. Almost continuously thereafter the Slocums having continued such offers, and during the trial the Slocums tendered into court a sufficient sum to pay the balance due on the judgment. At no time would Pantaze accept such offers.

The tender made by the Slocums in this case was more than sufficient. Weaver v. Nugent, 72 Tex. 272, 10 S.W. 458 (1888).

The evidence in this case further shows that Pantaze also abstracted the judgment

lien in Dallas County where the Shushoks owned another piece of property. The Shushoks sold that property and paid $711.00 from the proceeds to Pantaze in part payment of his judgment. The remaining $142.00 owed on that judgment by the Shushoks to Pantaze, plus $83.00 cash for sheriff's fees, had been bid by Pantaze on the purchase price of this house that the Slocums had agreed to purchase for $22,000.00. Pantaze's judgment was initially for only $759.65. His continued refusal to accept the offers made by the Slocums, which would have made him whole, and his diligent efforts to acquire this house and lot for which the Slocums had agreed to pay $22,000.00 for the paltry sum of $225.00 would more than justify the trial court in concluding that Pantaze was trying not only to collect the judgment, but was also trying to parlay the $225.00 he bid on the house into a sum many times greater.

The trial court correctly held that the evidence showed as a matter of law there were irregularities in the execution, levy and sheriff's sale.

■ At the time the execution was issued (September 29, 1971) and at the time it was levied on the property (September 30, 1971), the house and lot were not the property of the judgment debtor. Prior to those dates it had been sold and conveyed to the Slocums who were not parties to the judgment. The return on the execution showed that the sheriff levied on the property as the property of the Shushoks, which was not the case on the date of the levy; a prospective buyer would have found title to the land in the Slocums at date of the levy. These facts as a matter of law showed an irregularity in the sale that was calculated to prevent the property from bringing a reasonable price at the sale. Graham v. Cansler, 191 S.W. 856 (Beaumont Civ.App., 1916, no writ hist.).

■ Rule 637, Texas Rules of Civil Procedure, requires the sheriff levying an execution to first call on the defendant, if he can be found, to point out property to be levied upon and that the sheriff shall first levy on property designated by defendant.

This rule was not complied with even though Pantaze and the sheriff knew Shushok's address. If it had been, the sheriff could have learned of the funds in the hands of the title company placed there for the very purpose of paying this judgment.

■ Rule 647, T.R.C.P. requires the sheriff to give the defendant or his attorney written notice of the sale either in person or by mail.

It was stipulated that the sheriff placed such a notice of the sale in the mail directed to the Shushoks, but that the Shushoks never received such notice.

These are all irregularities that were calculated to make the property sell at the sale for less than its reasonable value. See Graham v. Cansler, supra.

Although the Slocums owned the house at the time of the levy and sale, and lived in it as their home at that time, they received no notice at all of either the levy or of the sale.

The record shows that the Shushoks possessed a sufficient amount of money and other personalty with which to pay the judgment but had no opportunity to point out property to be levied on. A sum equal to more than the judgment had been placed by the Shushoks in the title company's hands for the specific purpose of paying off the judgment, if their appeal was unsuccessful. Here Pantaze directed the sheriff to levy on this specific property (the house and lot).

The undisputed evidence showed that there were no facts that existed that would estop the Slocums from complaining of these irregularities.

■ Pantaze in his 2nd and 11th points of error contends that the trial court erred in holding as a matter of law that the un-

disputed evidence showed that the conveyance from the Shushoks to the Slocums was not a fraudulent conveyance. We overrule those points.

The undisputed evidence showed that the Slocums saw a for sale sign in the yard of this house having on it the name and 'phone number of J. B. Young, Jr. He was a former husband of Suzette Shushok, and they had acquired this property during their marriage. They had two children and Young conveyed the legal title to the property to Suzette Shushok. Young had executed a $10,000.00 note that was secured by a lien on the property, so he was interested in getting the property sold. Young handled the deal and the Slocums contracted to buy the property from the Shushoks. The Slocums did not know nor had they ever seen the Shushoks prior to the date of closing the deal in the office of the title company's lawyer. Following the closing, the Slocums moved into the house and have lived there ever since. At the time the deal was closed, the Shushoks placed in the hands of the title company more than enough money with which to pay off the judgment. The money was placed in escrow to be used for the very purpose of paying off the judgment if it became final.

The undisputed evidence in the case showed that the sale by the Shushoks to the Slocums was not a fraudulent conveyance within the meaning of, V.T.C.A. Texas Bus. & Com.Code Ann., Sec. 24.02.

In Pantaze's 7th point of error he contends that the court erred in directing a verdict for defendants because in doing so it sustained a collateral attack on the sale, which sale was at most just voidable and not void.

We overrule the point.

All parties agree that the judgment upon which the execution was issued was a valid decree.

In this proceeding the Slocums filed a counter claim against Pantaze, the purchaser at the sheriff's sale, attacking the execution sale and sheriff's deed and seeking to set them aside on the ground that the price that Pantaze paid for the property was grossly inadequate and because there were irregularities in the sale which were calculated to cause the property to bring much less than its value. Parties to this suit were the judgment creditor (Pantaze), the judgment debtors (the Shushoks), and the purchasers of the title to the property from the Shushoks (the Slocums).

This counter claim was being tried on the occasion when the court rendered the decree being appealed from here. This decree in part did order that the sheriff's sale and deed of November 2, 1971 be set aside and held for naught.

We hold that the attack upon the sale made by the Slocums in their counter claim was a direct attack and not a collateral attack. A case directly in point is Moore v. Miller, supra. See also Stone v. Day, 69 Tex. 13, 5 S.W. 642 at page 644, (1887), Nance v. Currey, supra, and Selkirk v. Selkirk, 297 S.W. 578 (Galveston Civ.App., 1927, no writ hist.).

And the following is from 24 Tex.Jur.2d 604, Executions, Sec. 133: "But where gross inadequacy of price is coupled with an irregularity that was calculated to prevent the securing of a fair sum, the sale may be avoided on a collateral attack." See Morris v. Hastings, 70 Tex. 26, 7 S.W. 649 (1888), and First Nat. Bank v. South Beaumont Land & Imp. Co., 60 Tex.Civ. App. 315, 128 S.W. 436 (1910, writ ref.). The sales being discussed there were judicial sales under executions.

The judgment is affirmed.