**APEX FINANCIAL CORPORATION,**
Appellant,

v.

**Timothy D. BROWN and Tim Bonner d/b/a Bonner Associates, Inc.,**
Appellees.

**No. 06–98–00155–CV**

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 2, 1999.
Decided Dec. 3, 1999.

Rodney L. Hubbard, Law Office of Michael R. Boling, Dallas, for appellant.

James E. Davis, Kenneth C. Greene, Novakov & Davis, Dallas, for appellee Timothy Brown.

Jeffrey R. Sandberg, Steven E. Kennedy, McGuire, Craddock, Stother & Hale, P.C., Dallas, for appellee Tim Bonner d/b/a Bonner Associates, Inc.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

**OPINION**

GRANT, Justice.

Timothy Brown, the original owner of the real property in issue, filed suit to set aside a sheriff's sale made pursuant to a judgment lien, contending that irregularities in the sheriff's sale resulted in a grossly inadequate sale price. The purchaser of the property (Apex Financial Corporation), the judgment creditor (Pagoda Trading Company, Inc.), and the sheriff who conducted the sheriff's sale (Jim Bowles) were all made defendants in the suit; and an original contractor on the property (Tim Bonner) intervened claiming a mechanic's and materialman's lien. The trial court entered summary judgment setting aside the complained-of sheriff's sale and thereafter ordered foreclosure and sale of the property pursuant to Bonner's mechanic's and materialman's lien. Apex, the purchaser at the sheriff's sale, appeals the summary judgment and presents the following points for review:

(1) Did the judgment dispose of all issues and counterclaims before the court so as to be a final judgment?

(2) Was Brown precluded from challenging the sheriff's sale under the terms of a prior settlement agreement with Apex?

(3) Is there conclusive proof that an irregularity in the sheriff's sale caused the property to be sold for a grossly inadequate price, so as to justify the setting aside of the sheriff's sale on summary judgment?

(4) Is there conclusive proof that a mechanic's and materialman's lien existed in favor of Bonner, so as to justify foreclosure of the lien on summary judgment?

In 1992, Brown purchased the property in issue, located at 1107 Pleasant Run Road (the Pleasant Run property). Brown contracted with Bonner to build a home on the property, and in so doing, Brown granted Bonner a lien in the amount of $2,377,206 to secure payment for the con-

struction. A written contract memorializing the lien was signed by both parties and acknowledged by a notary public. On July 6, 1994, Bonner filed the contract with the acknowledgment in the Dallas County clerk's office. On February 15, 1995, Bonner filed a waiver of lien in the same records. Then, on March 27, 1995, Bonner refiled the original contract and the original acknowledgment in an attempt to revive the lien.

In April of 1995, Pagoda recovered a final judgment against Brown and others in a suit styled *Pagoda Trading Company, Inc. v. Pro Moves, Inc., et al.* in the United States District Court for the Eastern District of Missouri. In an effort to obtain satisfaction of this judgment, Pagoda perfected its judgment in the 116th District Court of Dallas County, Texas, and obtained a writ of execution against Brown in the amount of $1,146, 200. Pagoda then delivered the writ to Sheriff Bowles with instructions to execute and sell the Pleasant Run property and two additional real properties owned by Brown to satisfy the judgment. On June 4, 1996, the sheriff sold the three properties to Apex, who was the highest bidder at $800 cash. Although the sheriff sold the three properties as one lot, the sheriff, at Apex's request, issued three separate deeds to the properties.

Shortly after the sale, Apex filed forcible detainer suits in the justice court seeking to evict the occupants of the other two properties. No such suit was filed for the Pleasant Run property, because it was still under construction and unoccupied. Pursuant to the forcible detainer suits, Brown and Apex entered into a settlement agreement which in relevant part provided the following: Brown would pay Apex $18,000 and upon payment, Apex would deed back the other two properties; agreed judgments would be entered in favor of Apex in the forcible detainer suits, but Apex would not take any action pursuant to the judgments unless Brown defaulted in the aforementioned payment; and Brown would not appeal the agreed judgments or challenge in any way the validity of the sheriff's sale of June 4, 1996.

On December 19, 1996, Brown filed suit against Apex, Pagoda, and Sheriff Bowles, seeking damages and an order setting aside the sheriff's sale as to the Pleasant Run property. Bonner intervened in the suit, claiming a mechanic's and materialman's lien on the property and seeking foreclosure on the lien. Apex, Brown, Bonner, Pagoda, and Bowles all filed motions for partial summary judgment. On September 30, 1997, the trial court dismissed Pagoda pursuant to a Rule 11 agreement, granted Brown's motion to set aside the sheriff's sale, and denied all other motions. Apex then filed its supplemental answer and counterclaim contending that Brown breached the earlier settlement agreement by challenging the validity of the sheriff's sale. On July 8, 1998, the trial court entered its final summary judgment setting aside the complained-of sheriff's sale and ordering foreclosure and sale of the Pleasant Run property pursuant to Bonner's lien.

In reviewing a summary judgment record, this Court must determine whether a genuine issue of material fact exists that would preclude the entry of a summary judgment. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990). The standards for reviewing a summary judgment are well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are indulged in favor of the nonmovant with any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 548–49.

The first point for us to address is whether the trial court's summary judgment order disposed of all issues and counterclaims raised in the case, so as to be a final and appealable judgment.

To be a final, appealable summary judgment, the trial court's order must dispose of all parties and all issues before the court. *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). If the order does not dispose of all issues and all parties, it is interlocutory; therefore, the case is not appealable absent severance. *Mafrige,* 866 S.W.2d at 591. When a summary judgment order appears to be final, as evidenced by the inclusion of Mother Hubbard language purporting to dispose of all issues and all parties, the judgment will be treated as final for the purposes of appeal. *Inglish v. Union State Bank,* 945 S.W.2d 810, 811 (Tex.1997).

Apex contends that its breach of contract counterclaim against Brown was not disposed of by the trial court's summary judgment; therefore, as such the judgment was not final. In support of this argument, Apex points out that its supplemental answer and counterclaim was not filed until after the trial court ruled on the summary judgment motion. However, the record reveals that the issue of whether the settlement contract precludes Brown from challenging the sheriff's sale had already been raised by Apex as a defense to Brown's motion for summary judgment. By granting Brown's motion for summary judgment, the trial court implicitly found that the contract did not preclude Brown from challenging the sale. Thus, by the time Apex filed its breach of contract counterclaim, the trial court had already effectively decided that it was not a breach of contract for Brown to challenge the sale. Moreover, the trial court stated in its judgment order that "all relief not specifically granted in this judgment is denied." A Mother Hubbard clause such as this makes a judgment final for purposes of appeal. Therefore, we find that the summary judgment in this case was a final judgment disposing of all issues and parties. Point one is overruled.

The next point we must address is whether the settlement agreement precludes Brown from challenging the sheriff's sale as to the Pleasant Run property.

Apex contends that the trial court erred in setting aside the sheriff's sale on summary judgment because the contract either unambiguously estops Brown from challenging the sheriff's sale as to the Pleasant Run property, or the contract is ambiguous and there is a genuine issue of material fact as to its meaning.

In construing a contract, a court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132 (Tex.1994). To achieve this objective, courts must consider the entire instrument in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391 (Tex.1983). Specific terms of a contract will control over more general terms, *O'Connor v. O'Connor,* 694 S.W.2d 152, 155 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.); *City of San Antonio v. Heath & Stich, Inc.,* 567 S.W.2d 56, 60 (Tex.Civ. App.-Waco 1978, writ ref'd n.r.e), although all provisions will be considered with reference to the whole instrument. *Coker,* 650 S.W.2d at 393.

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing when the contract was formed. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527 (Tex.1987). Not every difference in the interpretation of a contract amounts to an ambiguity—neither conflicting expectations or disputation is sufficient to create an ambiguity. *Forbau,* 876 S.W.2d at 134. A contract will be held to be ambiguous only when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one interpretation. *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). If a contract is ambiguous, the interpretation of the instrument becomes a fact issue and summary judgment is improper. *Coker,* 650 S.W.2d at 394. On the other hand, if a written instrument is worded so that it can

be given a definite legal meaning, then it is not ambiguous and the court must construe the contract as a matter of law. *Id.* at 393.

■ The contract in the present case arose out of an effort to settle the forcible detainer suits on the other two properties. The contract provides a recitation of the background facts and then states, "Whereas, all the parties to this agreement wish to settle all the issues related to the *two properties* subject to the Justice Court cases, IT IS AGREED AS FOLLOWS...." (Emphasis added.) The contract thereafter lists the agreed-upon terms, including a provision stating that Brown will not appeal the two forcible detainer judgments, nor challenge in any way the validity of the sheriff's sale.

This contract is not ambiguous. In light of the circumstances, the contract is reasonably susceptible to only one meaning. The contract is not intended to apply to the Pleasant Run property. As stated in the contract itself, the purpose of the contract was to settle all issues related to the other two properties. Although there was only one sale for all three properties, the provision precluding Brown from challenging the sheriff's sale must be read in conjunction with the earlier and more specific statement of purpose.

Apex contends that the prohibition against challenging the sheriff's sale is rendered meaningless if it does not apply to the Pleasant Run property because under the contract, Apex was to convey back the other two properties to Brown in return for $18,000. Yet, Apex overlooks the fact that the contract precluded Brown from challenging the sale of the other two properties *before* they were conveyed back to Brown. Without this provision in the contract, Brown may have had the entire sale set aside and regained title to the other two properties without paying Apex a penny. The prohibition against challenging the sheriff's sale ensured that Apex would either be paid for the other two properties or else get to keep them. This provision is by no means meaningless.

■ In harmonizing and giving effect to all provisions of the instrument, we conclude that the settlement agreement released Brown's claims only as to the other two properties. Any claim not specifically within the subject matter of a release is not discharged. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991). Therefore, we conclude as a matter of law the settlement agreement did not preclude Brown from challenging the sheriff's sale as to the Pleasant Run property. Point two is overruled.

The third point for review is whether there is conclusive proof that an irregularity in the sheriff's sale caused the property to be sold for a grossly inadequate sale price, so as to justify setting aside the sheriff's sale on summary judgment.

■ It is the policy of our law to sustain execution sales. *Keda Dev. Corp. v. Stanglin,* 721 S.W.2d 897, 903 (Tex. App.-Dallas 1986, no writ); *Burnam v. Blocker,* 247 S.W.2d 432 (Tex.Civ.App.-Fort Worth 1952, writ ref'd). Technical irregularities in a sheriff's sale, standing alone, will not warrant the setting aside of a sheriff's sale. *Collum v. DeLoughter,* 535 S.W.2d 390 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.); *Prudential Corp. v. Bazaman,* 512 S.W.2d 85, 90 (Tex.Civ. App.-Corpus Christi 1974, no writ). Likewise, an otherwise valid sheriff's sale will not generally be set aside for inadequacy of price alone.[1] *Roquemore v. Kellogg,* 656 S.W.2d 646, 650 (Tex.App.-Dallas 1983, no writ); *Brimberry v. First State Bank of Avinger,* 500 S.W.2d 675, 677 (Tex.Civ.

---

1. Note, however, that in 1896 the Texas Supreme Court stated in *House v. Robertson* that "it cannot be denied that there may be cases in which the price paid is so utterly insignificant, and shockingly disproportionate to the value of the property, that ... the mere fact of attempting to hold the property so purchased will be held conclusive evidence of fraud." *House v. Robertson,* 89 Tex. 681, 36 S.W. 251 (1896). A limited research has failed to uncover a single instance when the courts have applied this exception.

App.-Texarkana 1973, writ ref'd n.r.e). To set aside a sheriff's sale there must be an irregularity calculated to affect the sale, and the irregularity must be coupled with a grossly inadequate price. *Kauffman & Runge v. Morriss,* 60 Tex. 119 (1883); *Group Purchases, Inc. v. Lance Inv., Inc.,* 685 S.W.2d 729, 730 (Tex.App.-Dallas 1985, writ ref'd n.r.e.); *Brimberry,* 500 S.W.2d at 676.

■■■■■ Furthermore, there must be a causal connection between the irregularity of sale and the inadequacy of the selling price in order to set aside a sheriff's sale. *McKennon v. McGown,* 11 S.W. 532, 533 (Tex.1889); *Allen v. Pierson,* 60 Tex. 604 (1884). "Under our system it is a question of fact to be determined from the evidence whether or not the irregularity had any influence upon the consideration. . . . It is not a matter of law. . . ." *Allen,* 60 Tex. at 604; *Charter Nat'l Bank—Houston v. Stevens,* 781 S.W.2d 368, 374 (Tex.App.-Houston [14th Dist.] 1989, writ denied). Yet, the courts have determined that proof of an irregularity coupled with grossly inadequate consideration, gives rise to an inference or presumption that the irregularity contributed to the low price. *State Mortgage Corp. v. Ludwig,* 121 Tex. 268, 48 S.W.2d 950, 955 (1932); *Prudential Corp.,* 512 S.W.2d at 90; *Snouffer v. Heisig,* 62 Tex.Civ.App. 81, 130 S.W. 912, 914 (1910, no writ). To create a fact issue on the matter, the burden then shifts to the party who wishes to enforce the sheriff's sale to rebut this presumption. *Prudential Corp.,* 512 S.W.2d at 90; *Snouffer,* 130 S.W. at 914.

For proof of an irregularity in the sheriff's sale in this case, Brown points to the uncontradicted summary judgment evidence that (1) the published advertisement of the sheriff's sale did not name Brown as a judgment debtor or identify the properties to be sold as belonging to Brown, and (2) the sheriff did not give Brown or his attorney written notice of the sale.

■■■ Rule 647 of the Texas Rules of Civil Procedure requires the sheriff to publish an advertisement of the sale once a week for three consecutive weeks preceding a sheriff's sale. The advertisement should contain a statement of authority by which the sale is to be made, the time of levy, the time and place of sale, a brief description of the property to be sold, the number of acres, an original survey, the locality in the county, and the name by which the land is most generally known. Tex.R. Civ. P. 647. Contrary to Brown's contention, it is not necessary for the published advertisement to name the judgment debtor in any way.

■■■ However, Rule 647 does require the sheriff to give a judgment debtor or his attorney written notice of the sheriff's sale, either in person or by mail. The failure to give such notice constitutes an irregularity in the sale. *Collum,* 535 S.W.2d at 392. Mailing notice of the sheriff's sale to the judgment debtor at the correct address will be sufficient, even if the notice was never received by the judgment debtor, but mailing notice to the wrong address results in an irregularity. *Crow v. Thompson,* 131 S.W.2d 1064, 1069 (Tex.Civ.App.-Amarillo 1939, writ dism'd judgm't cor.).

In the present case, the sheriff sent notice by registered mail to the correct location, but the envelope was addressed to Brown's company, a cojudgment debtor—rather than to Brown, the owner of the property. The notice was returned unclaimed. Apex does not challenge the trial court's presumed finding that this constituted an irregularity in the sheriff's sale. Therefore, we must only determine whether, as a matter of law, the property was sold for a grossly inadequate price as a result of this irregularity of notice.

■■■■■ The particular facts of each case will determine whether the sale price was so grossly inadequate as to warrant the setting aside of the sheriff's sale. *House v. Robertson,* 89 Tex. 681, 36 S.W. 251 (1896); *Rio Delta Land Co. v. Johnson,* 566 S.W.2d 710, 712 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). In

making such a determination, the courts are guided by the following principle:

> [I]f the disproportion between the price paid and the real value at the time of the property is enormous, but slight circumstances will justify vacating the sale, and the greater such inadequacy of price the slighter need be the circumstances of fraud, accident, or mistake.

*McKennon,* 11 S.W. at 532; *see Rio Delta Land Co.,* 566 S.W.2d at 712; *Pantaze v. Slocum,* 518 S.W.2d 407, 410 (Tex.Civ. App.-Fort Worth 1974, writ ref'd n.r.e.). To properly determine the adequacy of consideration, the condition of the property and all liens subject thereto should be taken into consideration. *Pantaze,* 518 S.W.2d at 410; *Willard v. Whitaker,* 153 S.W.2d 878, 882 (Tex.Civ.App.-Amarillo 1941, writ ref'd w.o.m.); *Teague v. Burk,* 18 S.W.2d 690, 691 (Tex.Civ.App.-Austin 1929, writ dism'd); *Houston v. Shear,* 210 S.W. 976 (Tex.Civ.App.-Austin 1919, writ dism'd).

The Pleasant Run property was sold along with the other two properties for a cash price of $800. The tax records show the assessed value of the Pleasant Run property alone to be $465,960 at the time of the sheriff's sale, while a private appraiser hired by Brown estimated the market value of the property to be $996,900. Bonner's $2.3 million lien on the Pleasant Run property had been refiled at the time of the sale. However, Bonner's sworn affidavit states that the outstanding lien was only $234,000 *at the time he intervened in the suit,* and Brown's brother's affidavit states that Brown *currently* has more than $500,000 worth of equity in the property.[2]

There is no summary judgment evidence that conclusively shows the amount of outstanding liens on the property *at the time of sale. See Gainesville Oil & Gas Co. v. Farm Credit Bank of Texas,* 847 S.W.2d 655, 664–65 (Tex.App.-Texarkana 1993, no writ) (Cornelius, C.J. and Bleil, J., concurring). Moreover, there is no summary judgment evidence that conclusively establishes the cash market value of the property at the time of the sale, because in a summary judgment proceeding the opinion of an expert as to the value of land generally does not establish a material fact as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Group Purchases, Inc.,* 685 S.W.2d at 731. Therefore, we conclude that there is a genuine issue of material fact as to whether the Pleasant Run property was sold for a grossly inadequate price.

 Moreover, we conclude that there is a genuine issue of material fact as to whether the price was affected by the irregularity in the sale. Assuming that the price paid was grossly inadequate, there is a presumption that the notice irregularity caused the low price.[3] However, this presumption may be rebutted by evidence that Brown caused the inadequacy in the price, if any. There is uncontroverted evidence that, at Brown's request, Bonner released the $2.3 million mechanic's lien so that Brown could seek third-party financing. Brown and Bonner agreed to subsequently refile the lien. Due to Brown's conduct, the public records were in a state of confusion, making it difficult for a potential buyer to determine the value of the property. A sheriff's sale will not be set aside if the judgment debtor's own fraudulent conduct caused or contributed to the inadequacy of the price.[4] *Roquemore,* 656 S.W.2d at 649; *Teague,* 18 S.W.2d at 690.

---

2. Based on Brown's figures in his brief, Apex paid less than four hundredths of one percent of the value of the Pleasant Run property.

3. Also supporting this presumption, there is summary judgment evidence that, had Brown received notice of the sale, he or others would have attended the sale and used his financial resources to preserve his rights in the Pleasant Run property.

4. Had the evidence shown that Brown intended to defraud or harm any person, Brown may have been charged with the crime of securing the execution of a document by deception. Tex. Pen.Code Ann. § 32.46 (Vernon Supp.2000).

In reviewing this summary judgment, we must indulge every reasonable inference in favor of Apex, as the nonmovant. Therefore, we conclude that the trial court erred in setting aside the sheriff's sale on summary judgment, because there is a genuine issue of material fact as to whether the price paid for the property was grossly inadequate, and as to whether the price resulted from an irregularity in the sale. Brown failed to prove these issues as a matter of law, as is required for summary judgment. Point three is sustained.

The fourth and final point we must address is whether a mechanic's and materialman's lien exists in favor of Bonner.

■ Mechanic's and materialman's liens are creatures of both the Texas Constitution and the Texas Legislature. A statutory lien exists through compliance with applicable statutes, while a constitutional lien arises by virtue of the Constitution without the aid of the statutes. *Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054 (1896); *Inman v. Clark*, 485 S.W.2d 372 (Tex.Civ.App.-Houston [1st Dist.] 1972, no writ).

■ Article XVI, § 37 of the Texas Constitution grants to mechanics, artisans, and materialmen of every class a lien on the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor, and requires that the Legislature provide by law for the speedy and efficient enforcement of such liens. TEX. CONST. art. XVI, § 37. Constitutional mechanic's liens are self-executing as between the original contractor and the owner. *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 267 (Tex.1974). However, constitutional liens will not be enforced against a third-party purchaser who has neither actual nor constructive notice of the lien. *Irving Lumber Co. v. Alltex Mortgage Co.*, 446 S.W.2d 64 (Tex.Civ. App.-Dallas 1969), *aff'd,* 468 S.W.2d 341 (Tex.1971); *Continental Radio Co. v. Con-*

*tinental Bank & Trust Co.*, 369 S.W.2d 359 (Tex.Civ.App.-Houston 1963, writ ref'd n.r.e.).

■ Accordingly, the Legislature has provided for mechanic's liens by statute, enlarging their scope and coverage and providing steps to be taken for their enforcement. When a mechanic's lien is acknowledged and filed of record as required by the statutes, it will be enforced against a subsequent purchaser without notice. TEX. PROP.CODE ANN. § 13.001 (Vernon Supp.2000). Yet, a statutory mechanic's lien will not be enforceable if it has been discharged by recording a lien release signed by the lienholder. *See* TEX. PROP.CODE ANN. § 53.157 (Vernon Supp. 2000).

■ In the present case, it is not disputed that Bonner's filing of the waiver of lien in the county records released any statutory lien that may have previously existed. Bonner contends, however, that a new statutory lien arose when he refiled the original contract with the original acknowledgment in the county records.

■ Once waived, a statutory lien cannot be revived.[5] *Collinsville Mfg. Co. v. Street*, 196 S.W. 284 (Tex.Civ.App.-Amarillo 1917, no writ). The waiver itself states that it releases Bonner's right to a statutory lien based on labor or materials furnished or *to be furnished* in the future. With the release appearing on record, Apex had the right to rely on the fact that the Pleasant Run property would not be burdened by a statutory mechanic's lien. *See Moran v. Wheeler*, 87 Tex. 179, 27 S.W. 54 (1894).

■ Yet, a constitutional lien can exist even if the lienholder fails to comply with the legislative requirements for statutory liens. *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 790 (Tex.1972). Indeed, a constitutional lien did arise between Brown and Bonner, as owner and original

---

5. Even if a previously waived lien could be revived in some manner, refiling the original

lien contract without new signatures or a new acknowledgment will not be sufficient.

contractor; and as between the two of them, the lien was never intended to be waived. Therefore, if the sheriff's sale is set aside on remand so that title is vested in Brown, the trial court's finding of a constitutional mechanic's lien in Bonner's favor should not be disturbed, and foreclosure should be ordered.

 However, if the sheriff's sale is not set aside on remand, the constitutional lien will not be enforceable against Apex as a subsequent purchaser of the property, unless Apex had actual or constructive notice of the lien at the time of the sale. *See Irving Lumber Co.*, 446 S.W.2d at 64; *Continental Radio Co.*, 369 S.W.2d at 359. Ordinarily, actual notice is a question of fact to be determined from all the facts and circumstances, and it becomes a question of law only when there is no room for ordinary minds to differ. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146, 148 (1950). Actual notice can be inferred when the purchaser had the means of knowledge and a reasonably diligent inquiry would have disclosed the full truth. *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951). In this regard, when there are newly constructed improvements on property, the purchaser has actual notice of any outstanding mechanic's and materialman's liens against the property which a proper inquiry would have disclosed. *Inman*, 485 S.W.2d at 374; *Marks v. Calcasieu Lumber Co.*, 245 S.W.2d 749, 752 (Tex.Civ.App.-Austin 1952, writ ref'd n.r.e.). On the other hand, constructive notice is a conclusive legal presumption which can be established, for example, by properly recording an instrument in compliance with the statutes. *University State Bank v. Gifford–Hill Concrete Corp.*, 431 S.W.2d 561, 571 (Tex.Civ.App.-Fort Worth 1968, writ ref'd n.r.e.); *City of Dallas v. Rutledge*, 258 S.W. 534, 538 (Tex.Civ. App.-Dallas 1924, no writ). It has been said that constructive notice would not exist but for some statute, so that if the applicable statute is not complied with, constructive notice will not be imputed. *Dee's Cabinet Shop, Inc. v. Weber*, 562 S.W.2d 945, 947 (Tex.Civ.App.-Fort Worth

1978, no writ); *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App.1928, holding approved); *see also* 54 TEX. JUR.3D *Notice* § 3 (1987).

 In light of the waiver of lien filed of record, we conclude that Apex did not have constructive notice of Bonner's lien as a matter of law. And, whether Apex had actual notice of Bonner's lien is a question of fact that must be determined from the surrounding facts and circumstances. The record reveals that construction was in progress on the Pleasant Run property at the time of the sale. Yet, reasonable minds could differ as to whether a reasonable inquiry would have disclosed the lien, because a search of the county records alone would have revealed the waiver. Therefore, *if the sheriff's sale is not set aside on remand,* we conclude that the trial court must make a factual determination that Apex had actual notice of Bonner's lien before the lien can be enforced against Apex. Summary judgment was not proper on this issue. Point four is sustained.

In conclusion, we find that, when viewed in the light most favorable to Apex, the summary judgment evidence establishes that:

(1) the trial court's judgment disposed of all issues and counterclaims before the court and thus was a final judgment;

(2) the prior settlement agreement does not preclude Brown from challenging the sheriff's sale of the Pleasant Run property;

(3) there is not conclusive proof that an irregularity in the sheriff's sale caused the Pleasant Run property to be sold for a grossly inadequate sale price, so it was improper for the trial court to set aside the sale on summary judgment; and

(4) there is conclusive proof that a mechanic's and materialman's lien exists in favor of Bonner if, on remand, the sheriff's sale is set aside and Brown gains ownership, but there is a fact issue

as to the lien if the sheriff's sale is *not* set aside and Apex gains ownership.

Furthermore, Apex should not be penalized for relying on the regularity of a sale conducted by a public official. Apex is guilty of no wrongdoing, while Brown, on the other hand, is the party in default on a judgment lien. Therefore, Brown should be required to reimburse Apex for its court costs, because such costs are reasonable expenses incurred in reliance on the sale. Denial of such recovery would tend to discourage bidding at sheriff's sales and result in sales at a lower price, which would be against the interests of judgment debtors as well as the public. *Keda Dev. Corp.*, 721 S.W.2d at 903.

The judgment of the trial court is reversed and remanded for further proceeding in accordance with this decision. Apex shall recover its costs against Brown.