**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed August 13, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00163-CV

---

### LYDA SWINERTON BUILDERS, INC, Appellant

### V.

### CATHAY BANK, Appellee

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-64001A**

---

## D I S S E N T I N G   O P I N I O N

In Part II of its opinion, the majority concludes that appellant Lyda Swinerton Builders, Inc. (the "Builder") fully released its materialman's and mechanic's ("M&M") lien, but "did not waive its right to file new M&M liens covering other property or securing payment for post-release expenses." I would hold that these post-release amended M&M lien affidavits could not have created a new M&M lien. I would affirm summary judgment in favor of Cathay Bank (the

"Bank") on the basis that it established its lien priority as a matter of law because the Builder's amended lien affidavits were ineffective to create new M&M liens. Therefore, I respectfully dissent.

### Supplemental Background[1]

This case involves a parcel of land consisting of six contiguous tracts making up nearly 16.5 acres (the "Property"). According to the Builder's M&M lien affidavits, these tracts are described as follows: Tract I – 0.8664 acre in area; Tract II – 0.1072 acre in area; Tract III – 10.4179 acres in area; Tract IV – 0.4236 acre in area; Tract V – 1.2451 acres in area; and Tract VI – 3.4235 acres in area.[2]

The Property was owned by Park 8 Place, L.P. (the "Developer"), which, as noted by the majority, is not a party to this suit. *See ante*, at 2. The Builder executed a contract with the Developer to make improvements to the Property in February 2007 (the "Project"). At the time that the Builder executed the contract, it had already begun working on the Project in January 2007. Further, the Builder acknowledges that, when it began work on the Project, the Bank had a deed of trust lien recorded on March 15, 2004, covering Tracts III, IV, and V, *i.e.*, approximately 12.0866 acres of the property. The Bank's deed of trust lien secured repayment of approximately $1.4 million it had loaned to the Developer's predecessor-in-interest.

After the Builder began work, the Bank loaned the Developer additional funds. In May 2007, the Bank filed a deed of trust lien against Tract VI, securing the repayment of a loan of $800,700.00 made to the Developer. In August, the

---

[1] I include my own background section to supplement the majority's facts and to focus on those facts that are important to my resolution of this dispute.

[2] The Builder numbers these tracts differently in an exhibit. The majority uses the numbers as referenced in the Builder's exhibit, but I use the tract numbers referenced in the lien affidavits. This difference in numbering has no impact on the analysis.

Bank filed another deed of trust lien, covering the entire Property, securing the repayment of $502,000.00 loaned to the Developer.

The Developer stopped paying the Builder for its work on the Project in August 2007. Because of these payment issues, the Builder ceased working on the Project on October 4, 2007. On October 10, 2007, the Builder filed its first M&M lien affidavit, reflecting a lien of approximately $3.2 million and encumbering Tracts I and II of the property. Apparently, around this same time, the Builder, the Bank, and the Developer engaged in meetings regarding obtaining funding for the Project. On October 19, 2007, the Builder's Houston operations manager, Brian Duncan, sent the following email to the Bank's representatives:

> We [the Builder] suspended all work on October 4th due to the outstanding payment issues. All of the subcontractors have demobilized from the site. No additional work has been performed since our meeting. We are preparing to take down the tower crane and remove the concrete forms for the tower structure by the end of the month.

Previous emails indicate that Duncan had met with at least one of the Bank's representatives earlier in October. The first email is dated October 11, 2007 and is from Duncan. In it, Duncan inquires about the availability of "the $1.5M funding," asks for an update on the "status of the loan," and requests that "the funds" be wired to the Builder's bank. The subject line of this email, and the rest of the emails contained in the string, is "Park 8 [the Developer] Funding Status."

The Bank subsequently loaned the Developer approximately $1.9 million. This loan closed on October 31, 2007.[3] The HUD settlement statement from the

---

[3] The record contains another email from Duncan, dated October 30, 2007, to an individual at the title company handling the closing of the loan between the Bank and the Developer. Attached to this email is an unexecuted release of the Builder's lien. In the email, Duncan asks "what time tomorrow" he should come to the title company to sign the release and pick up the Builder's check for $1,086,914.62.

closing of the Bank's loan to the Developer reflects that the Builder received $1,086,914.62 from the loan funds.[4] The record contains a "Release of Lien," executed by the Builder, which reflects that, in consideration of $1.5 million,[5] the Builder released its October 10, 2007 M&M lien described above (the "Released M&M Lien"). This lien release was signed on October 31 and filed on November 5, 2007 in the Harris County Property Records. Also on October 31, the Developer signed a deed of trust in favor of the Bank, covering the entirety of the Property and securing the Bank's $1.9 million loan. This deed of trust was filed of record on November 5, 2007 (the "November deed of trust").

After releasing its original M&M lien, the Builder maintained a presence on the Property and continued to submit bills to the Developer, but *never* recommenced work on the Project. On November 13, 2007, the Builder filed a "First Amended Affidavit for Mechanic's and Materialman's Lien," which in its body specifically described and purported to amend the Released M&M Lien. This M&M lien purportedly encumbered Tracts I and II and claimed an indebtedness of $2,887,070.20, which included indebtedness of $2,141,529.88 remaining from the Released M&M Lien that was not paid through the loan funds. This amended M&M lien affidavit was followed by three more amended M&M lien affidavits, filed on June 12, 2008, October 23, 2008, and January 16, 2009, each encumbering Tracts I and II, as well as adding Tracts III through VI, each specifically referencing and purporting to amend a prior M&M lien affidavit, and

---

[4] The majority states that the Bank paid the Builder these funds. *See ante*, at 4. More accurately, the money for this payment came from funds the Bank *loaned* to the Developer. This amount was paid during settlement of the loan directly to the Builder by the title company handling the loan closing. Thus it is more precise to state that the Developer paid these amounts.

[5] Another subcontract, not a party to this dispute, was paid $413,085.38 out of the Developer's loan funds and also released its M&M lien, which is why the release reflects $1.5 million.

each for an increased amount. The final indebtedness the Builder claimed is over $6.7 million.

On October 24, 2008, while still maintaining a presence on the Property and still incurring expenses, the Builder filed suit against the Developer for breach of contract and to foreclose on its M&M lien. In December 2008, the Bank intervened in the lawsuit, asserting a superior interest in some or all of the Property. The Builder finally demobilized from the Project in March 2010—nearly eighteen months after filing suit against the Developer. The Developer filed for bankruptcy protection, which temporarily abated proceedings in the underlying suit.

The Bank moved to sever the lien priority issues from the underlying suit in December 2009 and lift the stay. This severance was granted in January 2010 and the abatement previously ordered was lifted to be effective March 20, 2010. On March 16, 2010, the Bank served a Notice of Substitute Trustee's Sale Under Deed of Trust, indicating that the Bank intended to sell the Property on April 6, 2010 "unless all indebtedness owing to the [Bank]" was settled before the foreclosure date. The notice of sale indicated that it was based upon the Bank's November deed of trust.

The Builder filed a supplemental petition seeking to temporarily enjoin the foreclosure sale until the lien priority dispute between it and the Bank had been fully and finally adjudicated. The Bank responded, asserting a general denial. It further alleged that the Builder did not meet the requirements for obtaining injunctive relief because the Builder had, *inter alia*, (1) released its M&M lien and agreed to subordinate any potential liens in favor of the Bank and was estopped from claiming lien priority over the Bank, (2) unclean hands because it had accepted $1.5 million dollars advanced by the Bank in return for a release of all

5

liens it had against the Project and then, less than two weeks after it had accepted these funds, purported to re-file liens against the Project, and (3) failed to timely file and perfect any M&M liens against the Property, except the one it had released. After a hearing, the trial court denied the Builder's request for a temporary injunction. The Bank then purchased the property at the foreclosure sale for $10,000.00. The Builder did not attend the sale.

Meanwhile, the Bank and the Builder proceeded to dispute lien priority in the severed suit. They filed cross-motions for final summary judgment, replies, and responses. In the Builder's motion, it asserted it was entitled to lien priority based on its final amended M&M lien filed on January 16, 2009, which it contended related back to the start of work in January 2007. It argued that the Bank's purchase of the property at the foreclosure sale was subject to the Builder's senior lien.

As is relevant to this dissent, the Bank contended that the Builder had released its October 2007 M&M lien and could not amend this M&M lien once it was released. Although both the Bank's and Builder's summary-judgment motions were denied twice by two different judges, the Bank's motion was later granted and the Builder's was denied. The trial court held that the Bank owned the property "free and clear" of the Builder's claims. After the Builder's motion for new trial was overruled by operation of law, this appeal timely followed.

### Analysis

I agree with the majority that the Builder fully released its October 10, 2007 M&M lien. *See ante*, at 10–11. This lien encumbered Tracts I and II. Once released, this M&M lien could not be revived. *See Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex. App.—Texarkana 1999, no pet.); *Collinsville Mfg. Co. v. Street*, 196 S.W.284, 287 (Tex. Civ. App.—Amarillo 1917, no writ) (stating that a

6

statutory M&M lien may be waived and that once waived, it cannot be revived). Moreover, the Bank has a superior interest in Tracts III, IV, and V pursuant to its deed of trust filed prior to the Builder starting the project. *See ante*, at 3 n.1.

I disagree, however, with the majority's conclusion that the subsequently filed amended M&M lien affidavits functioned as new liens for newly incurred or unpaid expenses relating back to the inception of work. The majority concludes that these amended M&M lien affidavits function substantively as new M&M liens because they substantially comply with the requirements of Texas Property Code section 53.054. *See ante*, at 16–18. This section details the requirements of a mechanic's lien. *See* Tex. Prop. Code § 53.054(a). I do not agree that the simple fact that these amended M&M lien affidavits, which may have complied with the statutory requirements, were transformed into *new* M&M liens because they clearly and unequivocally state that they are *amended* M&M liens.

The majority misconstrues my point. I am not promoting form over substance: as noted above and as is evident in the attached Appendix, in each of the amended M&M lien affidavits, Brian Duncan, on behalf of the Builder, states *under oath* that the M&M lien affidavit amends either the original or a subsequent amended M&M lien affidavit.[6] When the Builder itself claims, under oath, that each one amends, or replaces, the previous one, we should take the Builder at its word. *Cf. Lazo v. RSI Int'l, Inc.*, No. 14-06-00432-CV, 2007 WL 2447299, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2007, no pet.) (mem. op.) (holding that endorsement that purported to amend insurance policy issued after policy was cancelled was a nullity because "there was nothing to amend").

---

[6] These statements are not mistakes or surplusage. These statements specifically reference the document numbers of the lien affidavits they purport to amend, the dates these lien affidavits were filed for record, and the volume and page numbers of the Harris County Real Property Records where these lien affidavits may be located.

7

In fact, in the first amended M&M lien affidavit, Duncan avers that he is amending the original M&M lien.[7] In the second and third amended M&M lien affidavits, he similarly states under oath that he is amending the first amended M&M lien. Finally, in the fourth amended M&M lien affidavit, he declares that he is amending the third amended M&M lien affidavit. In short, each of the amended M&M lien affidavits rests on a previously filed M&M lien affidavit, tracing its way back to the Released M&M Lien.[8]

In my view, these four M&M lien affidavits are exactly what they purport to be: amended M&M lien affidavits. If there is nothing for an amended instrument to amend, then such an amended instrument is itself ineffectual nullity. *Cf. id.* The Builder has rested its amended lien affidavits on a non-existent foundation.

In short, the Builder filed amended M&M lien affidavits, rather than new M&M liens. But because the original M&M lien upon which all the amendments rest was released, there was nothing to amend. *See Apex Fin. Corp.*, 7 S.W.3d at 830 (explaining that, once waived, a statutory lien cannot be revived);[9] *Collinsville Mfg. Co.*, 196 S.W. at 287 (same); *cf. Lazo*, 2007 WL 2447299, at *4. The Builder constructed a house of cards out of amended lien affidavits, with each amended

---

[7] The majority implies that this first amended M&M lien was ineffective because it asserted a lien only against the same parcels as the Released Lien. *See ante*, at 14.

[8] The majority notes in footnote 11 that my "rule" would apply "with equal force" if an M&M lienholder received payment and filed the statutorily required release and then filed lien affidavits as amendments. My "rule" would apply only if this lienholder, *in the body of his lien affidavit*, averred that he was amending the previously released lien. I simply do not believe that this particular fact pattern would occur in many instances.

[9] I recognize that the waiver filed in *Apex* was broader than the release filed here. The waiver filed of record in *Apex* stated that it released the contractor's "right to a statutory lien based on labor or materials furnished or *to be furnished.*" *Apex*, 7 S.W.3d at 830. Here, as the majority notes, there is no language in the release indicating that the Builder intended to refrain from filing *new* M&M liens. *See ante*, at 15. I believe, however, that the fact that the Builder filed *amended*, rather than new, M&M lien affidavits, is dispositive of this issue.

affidavit resting on a previous affidavit, and all of them relying on the non-existent foundation of the Released Lien.  Ultimately, the Builder's amended lien affidavits built upon the Released Lien tumble down like a house of cards.

## Conclusion

For the foregoing reasons, I would affirm the trial court's summary judgment because none of the post-release amended M&M lien affidavits were effective to create a new M&M lien.  Accordingly, the Bank established its lien priority as a matter of law.  I therefore respectfully dissent.


/s/    Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby. (Busby, J., majority).

## Appendix

Following are excerpts from the Released Lien affidavit and each of the four amended lien affidavits. The amending language in each amended lien affidavit is emphasized.

### AFFIDAVIT FOR MECHANIC'S AND MATERIALMAN'S LIEN

BEFORE ME, the undersigned authority, personally appeared Brian Duncan, who upon his oath, deposed and stated the following:

. . .

4. The labor, materials and work furnished by Claimant are generally described as follows: labor and materials necessary for the construction of the Park 8, Tower B, Houston, Harris County, Texas.

5. The real property sought to be charged with a lien by Claimant is generally described [as] the Park 8, Tower B, 8018 W. Sam Houston Parkway South, Houston, Texas 77072 and more particularly described as follows:

TRACT I: Being a 0.8664 acre (37,739 square foot) tract of land out of the remainder of 62.01 acre tract of land . . . .

TRACT II: Being a 0.1072 acre (4,669 square foot) tract of land out of the remainder of a 62.01 acre tract of land . . . .

. . .

7. After all just credits, offsets and payments, the amount of $3,228,444.50 remains unpaid and is due and owing to Claimant under its contract with Park 8 Place, L.P., and Claimant claims a lien on said property and improvements under the provisions of Texas Property Code § 53.001 et seq. to secure payment of said amount.

## FIRST AMENDED AFFIDAVIT FOR MECHANIC'S AND MATERIALMAN'S LIEN

BEFORE ME, the undersigned authority, personally appeared Brian Duncan, who upon his oath, deposed and stated the following:

. . .

3.    *This First Amended Affidavit for Mechanic's and Materialman's Lien amends the Affidavit for Mechanic's and Materialman's Lien originally filed for record on October 10, 2007 at Document No. 20070615856, Volume 050-84, Pages 0564, et. seq. of the Real Property Records of Harris County, Texas.*

. . .

5.    The labor, materials and work furnished by Claimant are generally described as follows:  labor and materials necessary for the construction of the Park 8, Tower B, Houston, Harris County, Texas.

6.    The real property sought to be charged with a lien by Claimant is generally described [as] the Park 8, Tower B, 8018 W. Sam Houston Parkway South, Houston, Texas 77072 and more particularly described as follows:

> TRACT I:  Being a 0.8664 acre (37,739 square foot) tract of land out of the remainder of 62.01 acre tract of land . . . .

> TRACT II:  Being a 0.1072 acre (4,669 square foot) tract of land out of the remainder of a 62.01 acre tract of land . . . .

. . .

8.    After all just credits, offsets and payments, the amount of $2,887,070.20 remains unpaid and is due and owing to Claimant under its contract with Park 8 Place, L.P., and Claimant claims a lien on said property and improvements under the provisions of Texas Property Code § 53.001 <u>et seq.</u> to secure payment of said amount.

11

## SECOND AMENDED AFFIDAVIT FOR MECHANIC'S AND MATERIALMAN'S LIEN

BEFORE ME, the undersigned authority, personally appeared Brian Duncan, who upon his oath, deposed and stated the following:

. . .

3.    *This Second Amended Affidavit for Mechanic's and Materialman's Lien amends the First Amended Affidavit for Mechanic's and Materialman's Lien originally filed for record on November 13, 2007 at Document No. 2007067266, Volume 051-78, Pages 1978, et. seq. of the Real Property Records of Harris County, Texas.*

. . .

5.    The labor, materials and work furnished by Claimant are generally described as follows:  labor and materials necessary for the construction of the Park 8, Tower B, Houston, Harris County, Texas.

6.    The real property sought to be charged with a lien by Claimant is generally described [as] the Park 8, Tower B, 8018 W. Sam Houston Parkway South, Houston, Texas 77072, consisting of six (6) adjacent tracts of land, more particularly described in Exhibit A attached hereto and incorporated herein.

. . .

8.    After all just credits, offsets and payments, the amount of $5,845,532.00 remains unpaid and is due and owing to Claimant under its contract with Park 8 Place, L.P., and Claimant claims a lien on said property and improvements under the provisions of Texas Property Code § 53.001 et seq. to secure payment of said amount.

EXHIBIT "A"

## TRACT I

BEING A 0.8664 ACRE (37,739 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## TRACT II

BEING A 0.1072 ACRE (4,669 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## TRACT III

BEING A 10.4179 ACRE (453,803 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## TRACT IV

BEING A 0.4236 ACRE (18,450 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## TRACT V

BEING A 1.2451 ACRE (54,235 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## TRACT VI

BEING A 3.4235 ACRE (149,128 SQUARE FOOT) TRACT OF LAND OUT OF THE REMAINDER OF A 62.01 ACRE TRACT . . . .

## THIRD AMENDED AFFIDAVIT FOR MECHANIC'S
## AND MATERIALMAN'S LIEN

BEFORE ME, the undersigned authority, personally appeared Brian Duncan, who upon his oath, deposed and stated the following:

. . .

*3.     This Third Amended Affidavit for Mechanic's and Materialman's Lien amends the First Amended Affidavit for Mechanic's and Materialman's Lien originally filed for record on November 13, 2007 at Document No. 2007067266, Volume 051-78, Pages 1978, et. seq. of the Real Property Records of Harris County, Texas [sic].*

. . .

5.   The labor, materials and work furnished by Claimant are generally described as follows:  labor and materials necessary for the construction of the Park 8, Tower B, Houston, Harris County, Texas.

6.   The real property sought to be charged with a lien by Claimant is generally described [as] the Park 8, Tower B, 8018 W. Sam Houston Parkway South, Houston, Texas 77072, consisting of six (6) adjacent tracts of land, more particularly described in Exhibit A attached hereto and incorporated herein.

. . .

8.   After all just credits, offsets and payments, the amount of $6,098,768.07 remains unpaid and is due and owing to Claimant under its contract with Park 8 Place, L.P., and Claimant claims a lien on said property and improvements under the provisions of Texas Property Code § 53.001 et seq. to secure payment of said amount.

[Exhibit A, identical to that described *supra* is attached.]

## FOURTH AMENDED AFFIDAVIT FOR MECHANIC'S AND MATERIALMAN'S LIEN

BEFORE ME, the undersigned authority, personally appeared Brian Duncan, who upon his oath, deposed and stated the following:

. . .

*3.     This Fourth Amended Affidavit for Mechanic's and Materialman's Lien amends the Third Amended Affidavit for Mechanic's and Materialman's Lien originally filed for record on October 23, 2008 in RP Vol. 060-60, Pages 0587, et. seq., Document No. 20080530463 of the Real Property Records of Harris County, Texas.*

. . .

5.   The labor, materials and work furnished by Claimant are generally described as follows:  labor and materials necessary for the construction of the Park 8, Tower B, Houston, Harris County, Texas.

6.   The real property sought to be charged with a lien by Claimant is generally described [as] the Park 8, Tower B, 8018 W. Sam Houston Parkway South, Houston, Texas 77072, consisting of six (6) adjacent tracts of land, more particularly described in Exhibit A attached hereto and incorporated herein.

. . .

8.   After all just credits, offsets and payments, the amount of $6,771,386.45 remains unpaid and is due and owing to Claimant under its contract with Park 8 Place, L.P., and Claimant claims a lien on said property and improvements under the provisions of Texas Property Code § 53.001 et seq. to secure payment of said amount.

[Exhibit A, identical to that described *supra* is attached.]