RICHARDSON et al. v. KENT et al.

No. 10944.

Court of Civil Appeals of Texas. Dallas.

Feb. 20, 1932.

Rehearing Denied March 19, 1932.

See, also, 21 S.W.(2d) 72.

Bishop & Holland and Wynne & Wynne, all of Athens, for appellants.

W. A. Tarver, of Austin, and Lawrence Treadwell, of Corsicana, for appellees.

JONES, C. J.

From an adverse judgment in the district court of Henderson county, appellants J. H. Richardson and J. P. Pickens have duly perfected an appeal to this court. The judgment was in favor of appellees, G. C. Kent and C. C. Pharris, sheriff of Henderson county. There were other parties interested in the suit against some of whom an adverse judgment was rendered, and for some of whom a favorable judgment was rendered; those adversely affected did not perfect an appeal to this court, and those in whose favor judgment was rendered are only pro forma parties to this appeal. The following is a sufficient statement of the case:

On May 13, 1925, the land in question, consisting of 1,290 acres, located in Henderson county, was conveyed by warranty deed by Harry A. May and wife to R. H. Logan. The consideration recited in the deed is $40,000, $14,000 of which was paid in cash, and the remaining $26,000 was represented by two vendor lien notes executed by Logan and made payable to May. One of these notes was for the principal sum of $18,000, and the other for the principal sum of $8,000, both secured by liens reserved on the land, and both maturing in one year from date. At such time it appears to have been understood that Logan would secure a loan on this land in the sum of $18,000 from the Federal Land Bank at Houston, with the $18,000 note and its lien as a basis, May to transfer the note and lien to said bank and it to take up and extend such note. It was also understood that Kent would purchase from May the $8,000 note for cash, and have the note and lien duly transferred by May to him. It was understood that the extension of the $18,000 note would be under the Federal Land Bank plan of re-

quiring amortization payments, and would be made a first and superior lien against the land, and that the $8,000 note would be made a second and inferior lien. This subordination of the lien securing the $8,000 note was necessary in order to secure the loan from the Federal Land Bank. This understanding as to the subordination of the $8,000 lien was carried out (1) by clear and unambiguous recitals in the transfer of the lien by May to the Federal Land Bank, securing the $18,000 note, and in the deed of trust executed by Logan to said bank, as security for the payment of such extended note; and (2) by May inserting a clause in the transfer of the $8,000 note and lien to Kent, providing that the lien thereby transferred should be a second and inferior lien to the lien securing payment of the $18,000 note. This transfer, with such subordination clause, was not only accepted by Kent, but signed and acknowledged by him, thereby making him an active party to such subordination. All transfers of liens were duly recorded in the proper records of Henderson county. The transfer of the lien to the Federal Land Bank and its filing for record antedated the transfer and filing of the lien to Kent.

The Federal Land Bank paid to May, as consideration for the transfer of the lien, $18,050; Kent paid to May, as consideration for the transfer of the $8,000 note and lien, the sum of $8,000. The note executed to the Federal Land Bank was in the sum of $19,000, this sum being made up of the $18,050 the land bank paid for the $18,000 note and $950 of stock Logan was required to subscribe for under the rule of the Federal Land Bank. This stock was also pledged with the Land Bank as security for the $19,000 note. The $19,000 note was an amortization note, and the payment of the interest and the portion of the principal provided for was to be made semiannually during the lifetime of the note.

A payment matured July 1, 1928, in the sum of $617.50, but Logan did not pay same, but made default thereof. Under provisions of the deed of trust to the Federal Land Bank, when this default occurred, the bank, at its option, could declare the entire indebtedness due, and the trustee, or a substitute trustee duly appointed, could sell the land under the usual provisions of such trust deeds; or it could elect to sell the land for the payment only of the amount for which Logan was in default, and require the purchaser to assume all of the remaining indebtedness. This latter course the bank elected to pursue, and M. H. Gossett, the trustee named in the deed of trust, duly appointed Pickens as substitute trustee, to make the sale, and duly executed to him a power of attorney with full power to act as such trustee. Such procedure was authorized under a provision of the deed of trust. After the due posting of notices, as

required by law and by the provisions of the deed of trust, the land was sold at public auction in the city of Athens, the county seat of Henderson county, to appellant J. H. Richardson, for the sum of $800 cash, and the assumption of the existing indebtedness against the land. A deed of conveyance of the 1,290 acres of land, in due form, was executed to Richardson, and he thereby became the legal owner of the land. Appellee Kent lived in Navarro county, and was given no personal notice of the time or place of the sale, and had no actual knowledge that the sale was to be made, or that Logan had defaulted in such payment. The sale was made September 4, 1928, and the deed was executed to Richardson September 12, 1928.

On December 15, 1928, Kent filed suit in the district court of Navarro county against R. H. Logan, Finis McCluney, and the Coggins National Bank of Brown county, Tex., to recover against Logan the amount of principal, interest, and attorney fee on the $8,000 note held by him, and to foreclose the lien against the 1,290 acres of land in question, against all of the defendants. Neither Richardson nor the Federal Land Bank was made a party to this suit, and neither of them appears to have had actual knowledge of the filing of this suit in the district court of Navarro county, though a lis pendens was filed and recorded in Henderson county. Logan and McCluney were duly served with process, but failed to appear and answer in such suit. The Coggins National Bank filed a disclaimer. It appears that Logan had made an ostensible conveyance of the land to McCluney, and that the Coggins National Bank had recorded in Henderson county a judgment against Logan.

On January 18, 1929, judgment by default with writ of inquiry was entered against Logan and McCluney, with the result that, upon the perfection of the writ of inquiry, final judgment was rendered against Logan and McCluney in the sum of $11,840.29, being the principal, interest, and attorney fee due on the note, together with a foreclosure of the lien on the 1,290 acres of land, and an order of sale was directed to issue to the sheriff of Henderson county.

The first notice that Richardson had of this judgment was when the sheriff, appellee C. C. Pharris, duly advertised the land for sale, in an attempted execution of the order of sale issued on the judgment. Richardson at once filed the original petition in this suit, seeking a temporary writ of injunction to restrain Kent and the sheriff from selling the land under the order of sale, and the permanent relief of a judgment decreeing that Kent had no interest in the land, and to quiet his title to said land in so far as such claim and judgment made a cloud thereon. The petition alleged the foreclosure and trustee's sale to pay the July installment of the note held by the Federal Land Bank,

Richardson's purchase of the land at said sale, and the deed of conveyance of the land to him by Pickens, the substitute trustee. The temporary writ of injunction issued and operated to prevent the contemplated sale of the land.

On March 9, 1929, G. C. Kent filed motion in the district court of Navarro county, praying that the foreclosure judgment secured in said court be set aside, and said motion was granted on the same day; thereafter, and on the same day, Kent amended his petition in the suit in the district court of Navarro county, making appellant Richardson and the impleaded defendants in this suit parties defendant in that suit, and sought to foreclose the lien as against him and the other defendants. The suit in the Navarro county district court is still pending.

Appellee Kent answered in this suit, and also pleaded by cross-action against Richardson and the impleaded defendants, alleging, in effect, that the sale under which Richardson became the apparent legal owner of the 1,290 acres of land was void, because of an alleged conspiracy existing between Logan and Richardson, in consummation of which Logan defaulted in the July 1, 1928, payment to the Federal Land Bank, and thereby permitted the land to be sold by the trustee and ostensibly purchased by Richardson, who was to bid in the land at the trustee's sale and take the deed in his own name, but that in truth and in fact Logan was to remain the real owner of the land, while Richardson was only to hold the land for Logan's benefit, so that the lien on the land in favor of Kent would be extinguished. It was also alleged that the substitute trustee, Pickens, entered into this scheme with Logan and Richardson to destroy Kent's lien, and in pursuance thereof caused the land to be sold at a time, approximately 12:30 o'clock noon, when it was unlikely any one other than Richardson would be present to bid on the land. It is further alleged that the failure of Pickens to notify Kent of the sale was in furtherance of this fraudulent scheme; that, had Kent known of the sale, he would have been present and would have protected his second lien by bidding in the land. It is likewise alleged that, by reason of this fraudulent scheme, the property sold at a grossly inadequate price, and that by reason of the premises the sale is invalid. It is further alleged that, independent of the fraudulent scheme, the land sold for a grossly inadequate price, at an hour in the day most unfavorable for the sale of land, and without notice to Kent, though the substitute trustee, Pickens, knew that he held a valid second lien against the land, and that the sale is therefore invalid.

Kent, in an alternative plea, not submitted to the jury, alleges the following: "* * * That if the plaintiff and this defendant's co-defendants refuse to permit this defend-

ant to foreclose his said lien, then and in that event, this defendant is entitled to recover said land in case he does equity in the premises by paying to defendants, or such of them as may be entitled thereto, the sum due on the loan into which the said $18,000.00 note was merged; that this defendant, under this court, here tenders such money in court and offers to do equity in the premises, and prays for a rescission of said executory sale so made by said May and wife to said Logan, and that title to said land be divested out of the plaintiff herein and out of this defendant's codefendants, and vested in this defendant. In this connection this defendant alleges that he is ready, able and willing to do full equity in the premises; that if the defendant, Federal Land Bank, so prefers, this defendant will accept a decree for said land made subject to said Federal Land Bank's deed of trust and note and will assume the payment of said note and pay said note at this time or in all respects become bound thereon to pay the same as and when it matures, to the same extent said Logan is bound, that said Logan, except for such interest as he may have in said land, is wholly insolvent and unable to respond in damages or to pay said note. All of the facts alleged in this entire pleading are made a part of this section 27 of this answer, in so far as they are pertinent to the relief sought under this court."

Kent's pleadings in respect to his allegations of fraud, and in respect to all other allegations on which he relies to secure the relief he seeks in his cross-action, are very full, but it is not deemed necessary to refer to them, further than as has been set forth. Kent contends that he alleged two distinct causes of action, each sufficient to nullify the trustee's sale and deed of conveyance, based on the sale: One in law based on alleged culpable fraud and collusion between Logan and Richardson and between Logan, Richardson, and Pickens, to procure the sale of the land under the Federal Land Bank's deed of trust on Logan's defaulted installment payment, in order to destroy Kent's lien and put the title to the land in Richardson's name, but to leave the equitable ownership in Logan; and the other, a suit in equity based on the low price at which the land was sold at the foreclosure sale, together with the alleged irregularities attending the sale; that, if he established either cause of action, he was entitled to a judgment decreeing the sale a nullity. Kent, neither in his pleadings nor in his prayer, asked that the sale be set aside, but his entire theory in each cause of action, claimed to have been alleged, is that the sale is void and should be treated as a nullity.

The court submitted the case on special issues. The submission of what is claimed as the cause of action at law is contained in special issues Nos. 1, 2, and 3; such issues and the verdict of the jury thereon are:

"Special Issue No. 1: Do you find from a preponderance of the evidence in this case that R. H. Logan and J. H. Richardson agreed among themselves that they would procure a sale of the land described in the pleadings in this case for the purpose of cutting off defendant, Kent's second lien on the land, and that the sale made by Pickens to Richardson was not made in good faith but was made for the purpose of cutting off said lien? Answer: No.

"Special Issue No. 2: Do you find from a preponderance of the evidence in this case that R. H. Logan, J. H. Richardson and J. P. Pickens agreed among themselves that they would procure a sale of the land described in the pleadings in this case, for the purpose of cutting off defendant, Kent's second lien on said land, and that the sale made by Pickens to Richardson was not made in good faith but was made for the purpose of cutting off said lien? Answer: No.

"Special Issue No. 3: Do you find from a preponderance of the evidence in this case that R. H. Logan and J. H. Richardson agreed that the said J. H. Richardson would purchase the land described in plaintiff's petition, at the sale held on September 4, 1928, and that the said R. H. Logan was to retain an interest in said land, the same being done for the purpose of extinguishing the second lien of G. C. Kent on the same land? Answer: No."

Special issue No. 4 refers to taxes that Kent had paid on the land in question, and will be given consideration later in this opinion. Kent claims that the equitable cause of action alleged was submitted by special issue No. 5, which is: "Special Issue No. 5: You will find from the evidence the value of the land described in plaintiff's petition, at the date of the sale to Richardson on September 4, 1928. Answer: We find the value at the sum of $38,700.00."

The answers of the jury to special issues Nos. 1, 2, and 3 are sustained by the evidence, and are adopted as the findings of this court. The answer of the jury, in response to special issue No. 5, finding the value of the land, we do not think is supported by evidence sufficient to discharge the burden of proof, resting on Kent on this issue, and is not adopted as the finding of this court. The record contains no evidence as to the value of the land on September 4, 1928, nor at any time later than November, 1925. The record does contain the assessed value for taxes on the land for the years 1928 and 1929, and such assessed value for each of said years is $10,750. In his application, made in November, 1925, to the Federal Land Bank for the loan on this land, Logan represented that it was worth $65,000, and, in response to questions propounded by appel-

lees, stated that he considered such sum to be the value of the land at that time. The recitation in the deed from May to Logan shows that, in May, 1925, Logan paid $40,-000 for the land. This is all of the evidence that could bear upon the issue of the market value of the land on September 4, 1928. We do not believe that it formed a sufficient basis for the submission to the jury of special issue No. 5, requiring a finding of the value of the land on September 4, 1928. The evidence gave the jury no basis on which to compute the market value of the land in answer to this special issue, and their answer could only have been based upon their individual opinions, unaided by any substantial evidence as to the market value of the land on such date.

■ The legal effect of the substitute trustee's deed to Richardson, in respect to its bearing on the Kent lien, is to destroy such lien and to leave him without the interest in the land transferred to him by Logan's assignment of the $8,000 note, unless the conveyance to Richardson be void; that is, unless the record, showing the sale and conveyance to him by the substitute trustee, carries such an infirmity on its face as to speak its invalidity, or unless the sale was attended by such irregularity as would warrant a court to decree its invalidity. Hampshire v. Greeves et al., 104 Tex. 620, 143 S. W. 147; Wilkinson et al. v. First Nat'l Bank·of Crosbyton, 118 Tex. 202, 13 S.W.(2d) 346, 347; Slay et al. v. Gose (Tex. Civ. App.) 233 S. W. 348; Thompson v. Litwood Oil & Supply Co. et al. (Tex. Civ. App.) 287 S. W. 279; Fuller Const. Co. v. Hudson (Tex. Civ. App.) 11 S.W.(2d) 541.

Kent recognized the rule of law announced by the above authorities, for, when he received knowledge of this conveyance, he at once moved the Navarro district court to set aside the judgment of foreclosure, which had theretofore been decreed to him, and, after securing such relief, at once amended his pleadings in that court and sought (1) relief by securing a judicial pronouncement of the invalidity of such conveyance, on the grounds heretofore named, and (2) relief by foreclosure of his restored lien on the land. But, before he had amended his petition in the Navarro county district court, the Henderson county district court had acquired jurisdiction of the subject-matter of the suit by the prior filing by Richardson of the instant suit; hence Kent came into the Henderson county district court and sought in that court, by cross-action, the same relief he had sought in the Navarro county district court.

■ Under our liberal system of pleading, Kent could seek in the same suit both the relief of securing a decree pronouncing the invalidity of the conveyance by the substitute trustee and the relief of a foreclosure of his second lien, which would be restored the instant the trustee's conveyance was pronounced invalid; there being no question of an intervening innocent purchaser. The only basis, however, for the relief of foreclosure of his inferior lien rests upon a judicial pronouncement that the conveyance to Richardson was invalid.

Ignoring the findings of the jury on special issues Nos. 1, 2, and 3, and basing its action entirely on the finding of the jury on the value of the land, as submitted under special issue No. 5, together with certain matters of alleged irregularity in the substitute trustee's sale of the land, resting on undisputed evidence, the court entered judgment in favor of Kent against Logan and Mc-Cluney for the principal, interest, and attorney fee on the $8,000 note, which is not here an issue, and against Richardson, McCluney, and Logan, foreclosing Kent's lien on the 1,290 acres of land, subject to the first lien of the Federal Land Bank. The court also created in favor of Kent, and foreclosed, a lien on the $950 worth of stock in the land bank, standing in the name of Logan, subject to the Federal Land Bank's prior lien, and directed the issuance of an order of sale on Logan's interest in the land and stock.

■ When a case is tried to a jury and submitted on special issues, the basis of the judgment rendered by the court must be the verdict rendered by the jury on the special issues, together with any facts established by the undisputed evidence, and such facts that are incident to the issues on which the jury made findings, which have support in the evidence. Knox v. Brown (Tex. Com. App.) 277 S. W. 91; Ormsby et al. v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. In the instant case, Richardson was entitled to judgment in his favor on the issue of the invalidity of the substitute trustee's deed of conveyance to him, on the failure to establish the grounds of the fraud and conspiracy alleged by Kent.

■ Under the pleadings of Kent, however, this issue of fraud was not the only affirmative issue pleaded, for there was the additional issue of the sale by the substitute trustee, for a grossly inadequate price, together with the supporting allegations of the sale having been had at an unusual and unfavorable hour, and at a time when no bidder, save Richardson, was present; and, further, that Kent had no actual notice of such sale.

■ The judgment was entered on this issue, and had for its basis the finding of the jury as to the value of the land at the time of the trustee's sale, the undisputed evidence as to the time of day at which the sale was had, the presence of only one bidder, and the failure of the trustee to give Kent personal notice of such sale. This was not a sufficient

basis for the judgment rendered. We have seen that the finding of the jury on special issue No. 5 must be set aside, because of the insufficiency of the evidence to sustain such finding, and without such finding the irregularities complained of will not form a basis for judgment in favor of Kent against the finding of the jury that no fraud was practiced against him. The trustee was under no legal duty to give Kent personal notice of the sale. Hampshire v. Greeves, supra. All that the trustee was legally required to do in the matter of giving notice was the posting of the three notices at the places and for the time required by statute. The evidence indisputably shows the fact of such posting.

■ However, waiving the fact of the insufficiency of the evidence to sustain the issue as to the value of the land, at the time of the sale, and treating this finding of the jury as the trial court treated it, as an established fact in the case, can the judgment of the court be sustained? The term "grossly inadequate consideration" has been defined to mean, a consideration so far short of the real value of the property as to shock a correct mind, and thereby raise a presumption that fraud attended the purchase. McGhee v. Wells, 57 S. C. 280, 35 S. E. 529, 76 Am. St. Rep. 567. Under the terms of the sale of the land by the substitute trustee, the purchaser was required to assume the entire remaining indebtedness owing the Federal Land Bank, and, under the terms of the deed to Richardson, he did assume such burden. Therefore it appears that the consideration paid and to be paid by Richardson was approximately 50 per cent. of the then value of the land, as found by the jury. We know of no case holding that, when property at a forced sale brings 50 per cent. of its value, the consideration paid by the purchaser is decreed as a matter of law, to be grossly inadequate; hence no presumption of fraud can be indulged in respect to this sale, and, without such presumption, the judgment of the trial court cannot be sustained, notwithstanding the action of the trustee in not giving personal notice to Kent and in selling the land with only one bidder present.

We therefore conclude that the court erred in rendering judgment of foreclosure against Richardson and Pickens, and that such judgment must be reversed and the case remanded. It follows that the court erred in dissolving the temporary writ of injunction, and that such judgment must be set aside and the temporary writ of injunction reinstated.

■ We fail to see on what ground the court gave judgment of foreclosure against Logan's interest in the $950 Federal Land Bank stock, and this portion of the judgment is set aside. However, this order is not to be construed as a holding that Logan's interest in such stock may not be subject to an execution issued on a personal judgment secured against Logan.

Special issue No. 4 and the verdict thereon are as follows: "No. 4: Do you find from a preponderance of the evidence in this case that G. C. Kent at the time he paid the taxes on said land, on the 31st day of January, 1929, for the year 1928, was acting in good faith and under the belief that he held a valid second lien against said land, and did so for the purpose of protecting his said lien? Answer: Yes."

Prior to the time these taxes were paid by Kent, the trustee's conveyance to Richardson had been placed of record, which gave to Kent constructive notice that he had no interest in the land at the time he paid the taxes. If this deed should be set aside, then Richardson had no interest in the land, and was in no way responsible for the payment of the taxes. If the trustee's deed to Richardson be finally pronounced valid, then Kent is in the attitude of a volunteer in the payment of the taxes, and cannot claim remuneration from Richardson, who did not own the land at the time it was assessed for the year 1928, and did not personally owe the taxes. In any event, the judgment against Richardson in respect to this item must be set aside. McCormick v. Edwards, 69 Tex. 106, 6 S. W. 32; Mumme v. McCloskey, 28 Tex. Civ. App. 83, 66 S. W. 853; Capt et al. v. Stubbs et al., 68 Tex. 222, 4 S. W. 467; North Texas Lbr. Co. v. First National Bank of Atlanta (Tex. Civ. App.) 186 S. W. 258.

It necessarily follows that, in our opinion, judgment of the lower court against Richardson and Pickens must be reversed and the cause remanded, the judgment dissolving the temporary writ of injunction must be set aside, and the writ of injunction reinstated to await the result of the final trial of this case, and the personal judgment for taxes against Richardson reversed and rendered.

Reversed and remanded in part, and reversed and rendered in part.