

# NUMBER 13-14-00091-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE ESTATE OF SANDRA BROUGHTON,
DECEASED; GARY T. WEIMER, INDIVIDUALLY
AND AS INDEPENDENT CO-EXECUTOR OF THE
ESTATE OF SANDRA BROUGHTON, DECEASED;
GREG WEIMER, INDIVIDUALLY AND AS
INDEPENDENT CO-EXECUTOR OF THE
ESTATE OF SANDRA BROUGHTON; ET AL.,                    Appellants,

v.

FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION; FINANCIAL FREEDOM
ACQUISITION, LLC; AND FEDERAL NATIONAL
MORTGAGE ASSOCIATION A/K/A FANNIE MAE,            Appellees.

On appeal from the 368th District Court
of Williamson County, Texas.

## MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Wittig

# Memorandum Opinion by Justice Wittig[1]

This is an appeal of a summary judgment on a claim of wrongful foreclosure of a reverse mortgage.[2] Appellants include the Estate of Sandra Broughton, Deceased; Gary T. Weimer, Individually and as Independent Co-Executor of the Estate of Sandra Broughton, Deceased; Greg Weimer, Individually and as Independent Co-Executor of the Estate of Sandra Broughton, Deceased; Jere Bob Bowden; and Bonnie Zamora, (collectively "Broughtons"). Appellees are Financial Freedom Senior Funding Corporation ("FFSFC"), Financial Freedom Acquisition, LLC, ("FFA"), and Federal National Mortgage Association ("Fannie Mae").

The Broughtons argue that irregularities caused a wrongful foreclosure with resulting inadequate consideration and that the entity that foreclosed the property did not have legal authority to do so. By memorandum opinion issued on March 3, 2016, we affirmed the summary judgment in part and reversed and remanded in part. *See Estate of Broughton v. Fin. Freedom Senior Funding Corp.,* No. 13-14-00091-CV, 2016 WL 836834, at *1 (Tex. App.—Corpus Christi Mar. 3, 2016, no. pet. h.) (mem. op.). Appellees have subsequently filed a motion for rehearing in this cause. Without changing our previous disposition, we deny the motion for rehearing, withdraw our earlier opinion and associated judgment, and issue this memorandum opinion and related judgment in their stead.

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2015 R.S.).

[2] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

We affirm in part and reverse and remand in part.[3]

## I. BACKGROUND

In 2006, Sandra and her husband Donald Broughton entered into a reverse mortgage loan on their homestead located at 190 Oakwood Trail, Leander, Williamson County, Texas with FFSFC. The original note was for $300,240.00. FFSFC, a subsidiary of Indymac Bank, was placed into FDIC receivership in July 2009. Certain assets of FFSFC presumably including the property in question were sold to FFA, including the mortgage servicing rights. However, conflicting summary judgment proof showed a prior sale of the same mortgage assets from FFA to Fannie Mae on July 23, 2007. The original Broughton note and deed of trust contained an acceleration clause requiring payment on the death of all borrowers. Sandra Broughton survived her husband, but died December 24, 2009. There was a delay in executing letters testamentary due to the loss of the original will. The letters were finally granted August 23, 2010, with Greg and Gary Weimer as co-executors of the estate.

Summary judgment proof showed that neither executor received FFA's notice letter dated January 26, 2010 because the letter was not sent to the debtor's address. Instead it was sent to the deceased Broughtons' former Oakwood Trail address. Nor had letters testamentary been issued at that time. On November 22, 2010, FFA sent a notice of foreclosure intended for Gary Weimer; the notice was again to the Oakwood Trail address, not to his mailing address. On February 15, 2011, FFA sent a notice of lien and election of preferred lien status stating that the estimated payoff for the loan was $162,095.18. On April 4, 2011, FFA (but not the lender) sent the executors a notice of

---

[3] Appellees recently filed a motion to set this cause for hearing by submission "on the soonest available date." We grant appellees' motion and issue this opinion accordingly.

substitute trustee sale.  Although additional extensions were requested, they were denied.

The property was listed for sale by the Weimers for the estimated value of $610,000.00.

The property was foreclosed on May 3, 2011, and the underlying lawsuit for wrongful

foreclosure was filed in August of 2011.

## II. STANDARD OF REVIEW

Summary judgments are reviewed de novo.  *Valence Operating Co. v. Dorsett,*

164 S.W.3d 656, 661 (Tex. 2005).  We apply the following standards in reviewing a

traditional summary judgment:  (1) the movant has the burden of showing that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in

deciding whether there is a disputed material fact issue precluding summary judgment,

evidence favorable to the nonmovant will be taken as true; and (3) every reasonable

inference must be indulged in favor of the nonmovant and any doubts must be resolved

in favor of the nonmovant.  *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997)

(*citing Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985)).

A no-evidence motion for summary judgment is similar to a motion for a pretrial

directed verdict.  *See Merrell Dow Pharms, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.

1997).  In a no-evidence summary judgment motion, the movant contends there is no

evidence of one or more essential elements of the claims for which the non-movant would

bear the burden of proof at trial.  TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson,* 249 S.W.3d

425, 426 (Tex. 2008).  Once the motion is filed, the burden shifts to the non-movant to

present evidence raising an issue of material fact as to the elements specified in the

motion.  *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006).  The trial

court must grant the motion unless the non-movant produces more than a scintilla of

evidence raising a genuine issue of material fact on the challenged elements. *See Wilson,* 249 S.W.3d at 426. However, the non-moving party is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i), *Notes and Comment*s (1997); *Wilson,* 249 S.W.3d at 426. We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). A no-evidence motion that only generally challenges the sufficiency of the non-movant's case and fails to state the specific elements that the movant contends lack supporting evidence is fundamentally defective and cannot support summary judgment as a matter of law. *Jose Fuentes Co. v. Alfaro,* 418 S.W.3d 280, 283 (Tex. App—Dallas 2013, pet. denied).

### III. UNFAIR PRICE

The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) an inadequate selling price; and (3) a causal connection between the defect and the inadequate selling price*. See Charter Nat'l Bank–Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).[4] We first examine the adequacy of the sales price.

The Broughtons contend irregularities in the foreclosure sale caused or contributed to cause the property to be sold for an inadequate or grossly inadequate price, citing as authority *American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex.

---

[4] As we discuss below, various courts have used different language to reflect the price inadequacy necessary depending on the circumstances. The *Stevens* Court uses the term "grossly" inadequate sales price while at the same time holding that the jury question about the fairness of the price was correct. *See Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App—Houston [14th Dist.] 1989, writ denied).

1975).  The property sold at foreclosure for $173,365.40, while the estimated value of the property was $610,000.00.  FFA's own appraisal shortly before foreclosure placed the value at $340,000.00,[5] and the property had been listed by appellants in 2010 for $585,000.00.  The Broughtons also argue that, depending on the degree of price inadequacy, there may be a presumption that an irregularity in the sale caused the low price.  *See Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 828–29 (Tex. App.—Texarkana 1999, no pet.).  "The particular facts of each case will determine whether the sale price was so grossly inadequate as to warrant the setting aside of the sheriff's sale."  *Id.* (citing *House v. Robertson,* 36 S.W. 251 (Tex. 1896); *Rio Delta Land Co. v. Johnson,* 566 S.W.2d 710, 712 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.)).

Appellees counter, citing *Richardson v. Kent,* which held that a sales price must fall so far short of the real value as to shock a correct mind (thereby raising a presumption that fraud attended the purchase).  *See* 47 S.W.2d 420, 425 (Tex. Civ. App—Dallas 1932, no writ).  Appellees also argue that a price of more than fifty percent of property value is not grossly inadequate as a matter of law.  *See Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.—Dallas 2007, pet denied).  The *Terra* court relied upon *Kent* as sole support for this proposition—and in *Kent* the court more accurately stated that they could find no case that held a sales price of more than fifty percent was grossly inadequate as a matter of law.  *Compare id. with Kent,* 47 S.W.2d at 425 ("Therefore it appears that the consideration paid and to be paid by Richardson was approximately 50 per cent of the then value of the land, *as found by the jury.*  We know of no case holding that, when property at a forced sale brings fifty per cent of its value, the consideration paid by the

---

[5] Appellees argue that appellants "judicially admit" a market value of $340,000 but context shows both in the underlying pleadings and their brief, appellants are referencing  FAA's own estimate of value.

6

purchaser is decreed as a matter of law, to be grossly inadequate; hence no presumption of fraud can be indulged in respect to this sale. . . ." (emphasis added)).

We reject appellees' argument that a sale price of approximately fifty percent of the value is adequate as a matter of law. *See id.* In any event, and more to the point, the significant disparity between the sales price of $173,365.40 and the opinion of market value of $610,000.00, greatly exceeds fifty percent and in fact is over three hundred and fifty percent. *Cf. Stevens,* 781 S.W.2d at 370–75 (finding approximately eighty-four percent of $430,000.00 fair market value to be inadequate and a proper cohort of damages).

Some courts have rejected the language that a foreclosure selling price be "grossly inadequate." *See id.* at 371. In *Stevens,* the relevant jury question was whether the "fairness" of the foreclosure price was affected by the failure of the mortgagee to notify, as promised, a person interested in purchasing the property. *Id.* In *Stevens*, it should also be noted that the fair market value of the property was $430,000.00 and the sale price was $355,000.00, a difference of $54,315.00. *Id.* 370–71. The trial court and appellate court rejected a proposed jury question that asked whether $355,000.00 was a "grossly inadequate bid price." *Id.* at 371. Rather than the sometimes-used test of "grossly inadequate bid price", the correct inquiry is the inadequacy of consideration. *See id.* at 373–74. Furthermore, whether or not irregularities of a sale had any influence upon the consideration paid in the sale is a question of fact. *Id.* at 374 (citing *Allen v. Pierson*, 60 Tex. 604, 605–06 (1884) (stating that where the price is grossly inadequate, slight additional facts showing fraud, irregularity, or other circumstances calculated to prevent

the property from bringing something like its reasonable value, might be sufficient to avoid the sale.)

Given the significant disparity between the sale price of $173,365.40, appellees' own appraisal of $340,000.00, and an appraised value of $610,000.00, we conclude appellants raised a fact issue thus preventing a summary judgment on this element. *Id*.; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *Apex Fin. Corp.*, 7 S.W.3d at 829.

## IV. NOTICE

On January 26, 2010, FFA sent correspondence addressed to the Estate of Broughton at 190 Oakwood Tr., Leander, Texas, 78641, stating a future threat to foreclose if any deficiencies were not cured within thirty days. Gary Weimer filed a summary judgment affidavit stating he did not receive the letter and the stated address was not his address. In his affidavit, Gary Weimer unequivocally stated he did not receive this correspondence and had not and did not reside at that address. We previously held a similar affidavit by the homeowner regarding lack of service constitutes some evidence of a defect in the foreclosure sale proceedings. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139–40 (Tex. App.—Corpus Christ 2008, no pet.). Thus, a fact issue remained as to whether the Saucedas were served with the notice that section 51.002(b)(3) of the property code required. *See* TEX. PROP. CODE ANN. § 51.002(b)(3), (West, Westlaw through 2015 R.S.); *Sauceda*, 268 S.W.3d at 140. Furthermore,

8

appellees fail to show that the 190 Oakwood Trail address is the last known address of the "debtor," given the demise of Mrs. Broughton, the last survivor of the couple.[6]

Appellants contend impliedly that the deed of trust notice requirements trump the property code requirements. The deed of trust apparently allows notice to be sent to the property address, presumably vacant after the death of Mrs. Broughton. This contrasts with section 51.002(b)(3) & (e) requiring written notice to each debtor at the debtor's last known address.[7] Furthermore, section 51.002(d) provides:

> *Notwithstanding any agreement to the contrary,* the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice . . . is given, regardless of the time of day at which the notice is given, is included in computing the 20–day notice period . . ., and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20–day notice period.

TEX. PROP. CODE ANN. § 51.002(d) (emphasis added).

Appellants contend that there is no proper summary judgment proof as to the holder of the note and the mortgagee on the deed of trust. The deposition testimony of Gail Funkhauser, who claimed to be the person most knowledgeable of the details of the transaction, testified that Fannie Mae had purchased the note and owned it throughout the transaction. Fannie Mae was the holder of the note, and perhaps the mortgagee, but did not foreclose the note. Fannie Mae was also the purchaser and sole bidder at the

---

[6] Section 51.002(b)(3) of the property code also required notice of sale to each debtor. *See* TEX. PROP. CODE ANN. § 51.002(b)(3). While there is some evidence that Mrs. Broughton lived at the address during her lifetime, there is no proof anyone lived there after her death.

[7] Section (e) provides that notice by certified mail is complete when deposited in the US mail, postage prepaid and addressed to the debtor at the debtor's last known address. In any event, even if an affidavit was submitted to the effect that service was completed, such evidence is only prima facie and could be controverted as was done here.

foreclosure "sale."[8]  Nor is the record clear that FFA had specific authority from Fannie Mae to foreclose.  It appears that at one time the deed of trust was assigned from FFSFC to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for FFA.  Other proof suggests that Fannie Mae was the mortgage holder and owner of the note.  Nevertheless, we agree with appellees that FFA as servicer of the deed of trust had authority to act on behalf of the lender, subject to statutory, contract, and constitutional restrictions.  *See Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied) (explaining that a deed of trust may be enforced by the mortgagee, regardless of whether the mortgagee also holds the note).

Appellants contend that section 51.0025 allows a mortgage servicer to foreclose on behalf of a mortgagee if the servicer and mortgagee have entered into an agreement to foreclose and the required notices under section 51.002(b) disclose that the servicer is representing the mortgagee under the servicing agreement and the name of the mortgagee.  *See* Tex. Prop. Code Ann. §§ 51.0025, 51.002(b)(3).  Appellees argue that where there is a debt secured by a note, which is, in turn, secured by a lien, the note and lien constitute separate obligations. *See Aguero*, 70 S.W.3d at 374.  We agree.  However, appellants are correct that the FFA did not disclose that it acted under an agreement with Fannie Mae to service the note.  These too are separate obligations.  Appellants counter that they were the mortgagee, not the noteholder, and accordingly did not need to disclose their principals and were empowered to foreclose.

---

[8] According to the testimony of Funkhauser, Fannie Mae did not actually bid at a "sale."  "It's a paper transaction.  If there is no third party sale, it reverts back to the note holder for the amount of the debt."  Thus, another irregularity is at issue because it appears there was some evidence that there was no public sale as required under section 51.002(a).  *See* Tex. Prop. Code Ann. § 51.002(a) (West Westlaw through 2015 R.S.).

10

In their brief, appellees admit and argue that their notice of substitute trustee sale shows the address of FFA and stated that FFA was acting as both the mortgagee and mortgage servicer. Indeed, this notice shows FFSFC, a subsidiary of Indy Mac Bank, as the original mortgagee, and FFA as "current" mortgagee and mortgage servicer.[9] Yet the summary judgment proof is in conflict as to the mortgagee note holder. Indeed FFA conveyed multiple mortgages to Fannie Mae, presumably including the Broughton mortgage/deed of trust in question.

FFA did not disclose it was acting on behalf of Fannie Mae. No copy of the note was produced. There is no showing of a complete chain of title between FFSFC and Fannie Mae. Further, there was no showing appellees had an agreement between FFA and Fannie Mae giving FFA authority to service the note and foreclose on behalf of Fannie Mae. The notice stated FFA was acting as the mortgage servicer for FFA, not that it was the lender.

Even assuming that FFA notices were properly originated, appellants failed to give the proper notice when the loan became due.[10] Under the deed of trust, the "Lender shall notify the secretary and borrower whenever the loan becomes due and payable under Paragraph 9." While FFA (or FFSFC) was the original lender, according to some summary judgment proof, the note and mortgage were apparently sold to Fannie Mae. The Texas Constitution also required notice from the lender. Subsection 10 "does not permit the lender to commence foreclosure until the lender gives notice to the borrower.

---

[9] Appellees go on to argue at page 5 of their response, FFA as mortgagee was not required to disclose it had any servicing agreement with FNMA or anyone else.

[10] Appellants note the lender to be the beneficiary under the deed of trust.

. . ." Tᴇx. Cᴏɴsᴛ. art. XLI § 50(k)(10).  The lender's notice must provide that a ground for foreclosure exists, giving the borrower at least thirty[11] days  to remedy the condition, pay the debt, or convey the homestead property.  *Id.*  The failure of the lender to notify is cumulative of the fact that the executors were not initially notified and did not live at the Oakwood Trail address.  Furthermore, Fannie Mae did not actually bid at the "sale" which, according to Funkhauser, amounted to a paper transaction with the note and property reverting back to Fannie Mae for the amount of the debt with no other bidders.

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *Tamez,* 206 S.W.3d at 582.  Every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.  *Am. Tobacco Co.*, 951 S.W.2d at 425.  Here, the proof does not unequivocally establish that FFA was the authorized mortgage servicer of Fannie Mae.  Issues of fact foreclose the availability of summary judgment under these circumstances.  We hold that there is some evidence of irregularity of the sale pertaining to required notices under the constitution, applicable statutes, and the deed of trust.  There is more than ample evidence on the lack of sufficient consideration paid and some evidence of the likelihood of this causal connection between the defects and the inadequate selling price.  *See Sauceda*, 268 S.W.3d at 139; *Apex Fin. Corp.*, 7 S.W.3d at 828–29.  Furthermore, under our system, it is a question of fact to be determined from the evidence whether or not the irregularity had any influence upon the consideration for which the

---

[11] Or at least twenty days under certain conditions not applicable here.

property sold. *Prudential Corp. v. Bazaman*, 512 S.W.2d 85, 90 (Tex. Civ. App.—Corpus Christi, 1974, no writ) (citing *Allen v. Pierson,* 60 Tex. 604 (1884) ("It is not a matter of law to be assumed by the court.")).

## V. BREACH OF CONTRACT CLAIMS

Appellees point out that the Broughtons did not respond to the no-evidence motion for summary judgment on the breach of contract claims. The trial court must grant the motion unless the non-movant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See Wilson,* 249 S.W.3d at 426. We accordingly affirm in part the trial court's summary judgment dealing with the breach of contract claims.

## VI. CONCLUSION

The portion of the summary judgment dealing with the breach of contract claims is affirmed. The remainder of the summary judgment is reversed and remanded.

**/s/ Don Wittig**
DON WITTIG
Assigned Judge

Delivered and filed this the
19th day of May, 2016.

13